**WPOW, INC., Plaintiff,**

v.

**MRLJ ENTERPRISES, et al.,
Defendants.**

**Civ. A. No. 83–0636.**

United States District Court,
District of Columbia.

March 15, 1984.

---

Benjamin S. Warren, III, Washington, D.C., David C. Hilliard, Thomas R. Leavens, Pattishall, McAuliffe & Hofstetter, Chicago, Ill., for plaintiff.

James K. Edmundson, Terry Michael Banks, Tepper & Edmundson, Washington, D.C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This is an action for copyright infringement, unfair competition, and fraudulent and corrupt practices based upon defendants' alleged wrongful filing of an application with the Federal Communications Commission (FCC) for authorization to construct new radio broadcasting facilities. Plaintiff claims that defendants prepared their application by copying its copyrighted material, and it seeks a writ of seizure of the allegedly infringing materials. Alternatively, plaintiff requests an impoundment order pursuant to § 503(a) of the Copyright Act, 17 U.S.C. § 503(a), which would require defendants to deliver to the Court all infringing materials, including their application with the FCC.

Based upon its finding that plaintiff is entitled to injunctive relief, the Court will

grant the request for an impoundment order.

## I

In 1980, plaintiff decided to apply to the FCC for permission to change the city of license of its AM radio station WHAZ in Troy, New York, to East Greenbush, New York, and, accordingly, to develop a new transmitting antenna on a site near East Greenbush. The site plaintiff chose was one adjacent to WHAZ's broadcasting studio facilities. It retained the engineering firm of Lohnes and Culver to conduct a study of the proposed change in broadcast facilities, to create a transmitting antenna design for the new facilities, and to prepare an engineering report.

The report was completed in March of 1981, and all rights, title and interest in and to the report were assigned to plaintiff effective March 12, 1981. Eight days later, three copies of the report were filed as an exhibit to the FCC application. No other copies were distributed to anyone.

When an application for new or modified AM facilities is filed, the FCC issues a public notice advising the general public of the acceptance of the application for filing and inviting interested persons to file competing applications by a designated date.[1] The application is then made available for inspection in the FCC's public reference room in Washington, D.C.[2] The first application for a particular frequency is also made available to the public in the proposed community of license.[3]

1. 47 C.F.R. §§ 73.3764 and 73.3571.

2. 47 C.F.R. § 0.453.

3. 47 C.F.R. § 73.3526.

4. At least four other competing applications were also filed with the FCC subsequent to the submission of plaintiff's application.

5. Among the design features which were either identical or strikingly similar are the transmitter site coordinates, daytime and nighttime operating power, number of towers, tower height, tower line bearing, tower spacing, tower current ratios, and pattern shape and size.

In August of 1981, five months after the filing of the WPOW application, defendant MRLJ Enterprises filed its application for authorization to construct a new radio broadcast station in East Greenbush. The facilities proposed in defendants' application, if authorized by the FCC, would exclude operation of the facilities proposed by plaintiff and thus would result in the FCC's rejection of plaintiff's application.[4] Attached to the MLRJ Enterprises application was an engineering report containing an antenna design which was identical to that submitted by WPOW in a number of particulars.[5] This action followed.

## II

The first question the Court must address concerns the nature of the showing plaintiff must take to obtain relief under section 503(a) of the Copyright Act.[6]

Section 503(a) notably lacks an explicit statutory standard to be applied by a court upon a request for impoundment.[7] Plaintiff relies upon the Ninth Circuit decision in *Duchess Music Corp. v. Stern*, 458 F.2d 1305 (9th Cir.1972) for the proposition that impoundment may be granted upon summary, even *ex parte* proceedings, at which the applicant need only make a prima facie showing of infringement. The Court rejects that construction of the statute.

The Copyright Act makes impoundment discretionary with the Court rather than mandatory, as plaintiff's argument would imply. Section 503(a) provides that the Court "may" order impoundment "on such terms as it may deem reasonable," sug-

6. That section provides in pertinent part:
   At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable, of all copies or phonorecords claimed to have been made or used in violation of the copyright owner's exclusive rights.

7. See *Martin Luther King, Jr. Center for Social Change, Inc. v. American Heritage Products, Inc.*, 508 F.Supp. 854 (N.D.Ga.1981), *rev'd on other grounds*, 694 F.2d 674 (11th Cir.1983).

gesting that the Court must determine whether impoundment is warranted and what terms are appropriate. Such determinations can appropriately be made only by procedures which are other than summary in character. Decisions such as that in *Duchess Music Corp. v. Stern, supra,* were based on provisions of the Copyright Act before it was amended in 1976,[8] as were the Rules of Practice for Copyright cases on which plaintiff likewise relies.[9] In none of the cases decided since the amendment was an impoundment granted without compliance with the normal injunction or stay requirements. See, *e.g., Munn v. Minority Broadcasting Co. of the Midwest,* Civ. No. 82 C 0759 (N.D.Ill. March 26, 1982); *Martin Luther King, Jr. Center for Social Change, Inc. v. American Heritage Products, Inc., supra,* 508 F.Supp. at 861; *Dollcraft Industries, Ltd. v. Well-Made Toy Manufacturing Co.,* 479 F.Supp. 1105 (E.D.N.Y.1978). See also *Clark Equipment Co. v. Harlan Corp.,* 539 F.Supp. 561 (D.Kan.1982) (writ of seizure and impoundment dissolved upon expiration of temporary restraining order and failure of plaintiff to meet showing of entitlement to preliminary injunction).

Plaintiff cites section 502(a) of the Act, arguing that the existence of this section—which governs injunctions and thus presupposes the normal standards for the grant of injunctive relief—implies that a lesser standard is to be applied when impoundment is applied for. The conclusion does not follow from the premise. An impoundment order is not technically an injunction, to be sure, but this does not exclude the possibility that a similar showing should be required as a prerequisite to its issuance with respect to relief that is technically injunctive in character. On the contrary, there is no reason whatever why a defendant against whom relief is sought under section 503(a) should be entitled to fewer protections than one who may be subject to an injunction under section 502(a). In both instances the defendant is deprived of a valuable property right, and the procedure in both types of cases should be commensurate with the injury inflicted.

The Court holds that a plaintiff seeking an impoundment must meet the requirements for permanent or preliminary injunctive relief.[10]

Since notwithstanding plaintiff's procedural argument the parties have also addressed the questions before the Court as if plaintiff's entitlement to a preliminary injunction were at issue, the Court will determine whether it should issue an impoundment order in accordance with the requirements normally required for the grant of preliminary injunctive relief.

## III

In order to be entitled to a preliminary injunction, a plaintiff must show (1) that he is likely to prevail on the merits of its case at trial; (2) that if no relief is granted he will be irreparably injured; (3) that the threatened injury to him outweighs the threatened harm the injunction may inflict on the defendant; and (4) that the grant of a preliminary injunction will not disserve the public interest.[11] The Court considers first the likelihood of success on the merits.

---

**8.** Impoundment was previously governed by former 17 U.S.C. § 101(c), which provided in relevant part:

> If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:
>
>     \*    \*    \*    \*    \*    \*
>
> (c) To deliver up on oath, to be impounded during the pendency of the action, upon such terms and conditions as the court may prescribe, all articles alleged to infringe a copyright.

**9.** In this respect, plaintiff cites *Rules 3–6 of the Rules of Practice for Copyright Cases,* 214 U.S. 533 (1909), as amended by 307 U.S. 652 (1959) and 383 U.S. 1031 (1966).

**10.** In the alternative, a plaintiff may move for a temporary restraining order pursuant to rule 65(b) of the Federal Rules of Civil Procedure, but such an order would of course expire within ten days.

**11.** *Washington Metropolitan Area Transit Authority v. Holiday Tours,* 559 F.2d 841 (D.C.Cir. 1977); *Virginia Petroleum Jobbers Association v. FPC,* 259 F.2d 921 (D.C.Cir.1958).

A. In order to prove infringement, a plaintiff must show ownership of a copyright and copying by defendants. 3 *Nimmer on Copyright* § 13.01 (1983).

█ In this case, plaintiff's ownership of a copyright is not in dispute. Protection under the Copyright Act exists automatically upon the creation of a work. 17 U.S.C. § 302(a). As long as the work is not published, it is protected whether or not it is registered with the Copyright Office or a copyright notice is placed on the work. 17 U.S.C. §§ 401, 408(a). Thus, plaintiff clearly has a copyright on the engineering report. The filing of that report with the FCC, and the action of the FCC in allowing public access to the application for inspection do not constitute publication. See 17 U.S.C. § 101 (definition of "publication"); 1 *Nimmer on Copyright* § 4.10 at 4–49.

█ Copyright infringement is ordinarily established by proof of (1) defendant's access to the copyrighted material and (2) substantial similarity between that material and the allegedly infringing material. 3 *Nimmer on Copyright* § 13.01[B] at 13–6. Defendants here of course had access to the engineering report when the FCC made plaintiff's application available to the public. In fact, defendants have admitted access, if not actual copying; their defense rests in part upon the assumption that they were entitled to some duplication of plaintiff's engineering report by virtue of the "fair use" doctrine. See *infra*.

With regard to the issue of substantial similarity, plaintiff has set forth a list of the striking similarities between the antenna design contained in its engineering report and the antenna design in the MRLJ report. Defendants claim that the reports themselves are markedly different, and they do present a number of differences in their papers. The reports' similarities are far greater than the differences, however, and, more important, such differences as exist are immaterial to the issue of copying.[12]

█ Whatever similarities or differences there are in the reports generally, the critical parts of the reports—the antenna design—are identical. Taking what is in essence the heart of the work is considered a taking of a substantial nature, even if what is actually taken is less than extensive. *Elsmere Music, Inc. v. National Broadcasting Co.*, 482 F.Supp. 741, 744 (S.D.N.Y.), *aff'd*, 623 F.2d 252 (2d Cir.1980). Thus differences between the reports with regard to maps, text, and format have no bearing on the issue of whether defendants incorporated the antenna design in plaintiff's report into their own. *Cf. National Business Lists, Inc. v. Dun & Bradstreet, Inc.*, 215 U.S.P.Q. 595, 600 (N.D.Ill.1982). The other differences defendants cite are either minor, or they constitute additions or modifications which may improve upon plaintiff's design but do not take away from the fact that defendants had to copy the design in the first place in order to improve upon it.[13]

█ B. Defendants assert next that even if the reports are substantially similar, the Copyright Act doctrine of fair use[14] prevents the grant of relief. In that respect, it is argued that FCC procedures contemplate that the first application filed in a proceeding will be reviewed by potential competitors, and that it is not uncom-

---

**12.** See 3 *Nimmer on Copyright* § 13.03[B] at 13–38 (immaterial that in many respects plaintiff's and defendant's works are dissimilar if in other respects similarity as to a substantial element of plaintiff's work can be shown.)

**13.** Defendants claim that their engineer "conducted a complete and separate engineering analysis of the site which is reflected in his report," and that its data was the result of independent analysis and therefore did not infringe plaintiff's report. The papers before the Court demonstrate, however, that defendants merely conducted a study to verify the patterns produced by plaintiff's antenna design. Moreover, when defendants' study disclosed different information than that contained in plaintiff's design, defendants ignored their own computer report and copied plaintiff's components. Compare *Central Telephone Company of Virginia v. Johnson Publishing Co.*, 526 F.Supp. 838, 843–44 (D.Col.1981).

**14.** 17 U.S.C. § 107.

mon for subsequent applicants to submit engineering proposals substantially identical to the first. Defendants observe also that if competitors filed engineering proposals markedly different from the initial one, the processing of applications by the FCC staff would be unnecessarily complicated since each proposal would have to be analyzed on its technical merits.

These contentions are not persuasive. In the first place, the FCC itself has expressed its disapproval of the unauthorized and uncompensated appropriation of another engineer's work product. See *Gatlinburg Broadcast Communications, Inc. and Vacation Radio Co.*, 47 Fed.Reg. 43782 (October 4, 1982); *Roanoke Christian Broadcasting*, BC–32660, 47 R.R.2d 1067 (B/C Bur.1980); see also *Gatlinburg Broadcast Communications, Inc.*, FCC 82–560, released December 15, 1982 (concurring statement of Commissioner Sharp). Indeed, the four other competing applicants for the FCC license filed engineering data completely different from plaintiff's data. In any event, whatever the FCC's rules may authorize or encourage potential applicants to do, and whatever conveniences may be generated by the reduction of variables among competing applications, those rules and those conveniences cannot affect the protection of an engineering firm's original work product afforded by the Copyright Act.[15]

Defendants also make a somewhat narrower "fair use" argument. They submit that plaintiff does not have an entitlement

to the site it chose for its antenna, and that once an applicant decides to specify a competitor's site and to operate at maximum power, any engineer would arrive at virtually identical specifications. In a similar vein, they contend that they copied only the idea of a two-antenna array at a particular site, and that all other variables constituting the design flow from that idea.

These arguments also fail to withstand scrutiny. The testimony and the affidavit submitted by plaintiff's engineer assert that there was "an almost infinite number of permissible radiation patterns which may be selected for a broadcasting signal," and they suggest that she and her firm exercised substantial judgment and selectivity in designing the components for a two-antenna array at the site chosen. Affidavit of Elizabeth L. Dahlberg, ¶¶ 7, 9, 10. Defendants do not contradict this evidence, but they attempt instead only to justify the decision to duplicate each individual component of plaintiff's antenna design. It is clear, however, that each separate decision involved choice and discretion. Defendants made their decisions on considerations of economy and assessments of risks, advantages, and disadvantages;[16] an identical antenna design was by no means inevitable.

Defendants' arguments thus fundamentally misconceive the nature of the protection afforded to plaintiff. To argue that plaintiff does not have an entitlement to this or that component of its design or to a particular idea is beside the point. Plain-

---

15. If the expectations and practice of any group were to be regarded as affecting the copyright protection afforded to engineering reports under the "fair use" doctrine, it would not be the FCC or applicants before that agency, but the community of professional engineers. According to the affidavit of the President of the Association of Federal Communications Consulting Engineers, the Association prohibits the practice of copying or otherwise appropriating another engineer's work in connection with proceedings at the FCC. Affidavit of William C. King, Jr., at ¶¶ 3, 4.

16. For example, defendants' engineer states that he decide to use two towers "since this represented the least expensive directional antenna to construct." Affidavit of Edward E. Perry, Jr. at

3. With respect to the operating power, Mr. Perry states that it was determined that defendants propose a 5 kilowatt nondirectional operation daytime "since to propose less power would place us at a competitive disadvantage with [plaintiff] WHAZ and to propose greater power could conflict with other applications which might also be filed in response to the WHAZ cut-off date but which would not themselves be mutually exclusive with the WHAZ application." *Id.* at 2. What Mr. Perry presents as a matter of logical necessity is in fact a decision based upon weighing the risk that future proposals might interfere with defendants' proposal against the competitive advantages to be derived from a higher operating power.

tiff is entitled to protection of the original expression of that idea as realized by the antenna design as a whole, consisting of an aggregate of components. Defendants' justification of their use of each individual component of the design overlooks the fact that plaintiff has and is claiming rights to the antenna design as a whole, not independent rights in each separate component.[17]

In short, plaintiff has clearly met its burden with regard to the likelihood of its success on the merits.

### IV

■ A copyright holder may be presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded, and such a holder is entitled to a preliminary injunction without a detailed showing of such harm. *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 620 (7th Cir.1982); *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977). This presumption of irreparable harm is also relevant to the question of the balance of injuries (*Wainwright Securities, supra*) and absent countervailing considerations, the balance of injuries favors the copyright holder whose rights have been infringed.

Defendants point out that if the Court impounds the engineering portion of their application to the FCC, it would effectively eliminate them as competitors in the pending proceeding. However, in the first place, defendants' application to the FCC will presumably remain pending; only the engineering report will be impounded. If after a trial on the merits here defendants

prevail, the report would be restored to them and to their application.[18]

In any event, the benefits defendants might have received from violating the copyright laws are not benefits to be protected from injury. *Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F.Supp. 125, 145–55 (D.N.J.1982). This consideration is particularly persuasive because, absent a court impoundment order, plaintiff has no remedy. Defendants' suggestion that plaintiff has an adequate remedy at law in that it could file a petition to deny MRLJ's application in the proceeding pending before the FCC is simply wrong.[19] It is the FCC's position that in an action such as this the proper recourse for copying of engineering reports in connection with license applications lies not with it but with the courts. *Gatlinburg Broadcast Communications, Inc. and Vacation Radio Co., supra; Roanoke Christian Broadcasting, Inc., supra; Gatlinburg Broadcast Communications, Inc., supra* (concurring statement of Commissioner Sharp). Any petition to deny filed by plaintiff with the FCC would therefore be fruitless.

As for the public interest, it, too, lies with the protection of the copyright laws. *Atari, Inc. v. North American Philips Consumer Electronics Corp., supra*, 672 F.2d at 620; *Midway Mfg. Co. v. Bandai-American, Inc., supra*, 546 F.Supp. at 155. Defendants argue that the public interest will be harmed by the removal of an otherwise qualified applicant in the pending proceedings before the FCC and by the elimination of a potentially superior broadcast station which would be owned and operated by minorities and women. But defendants can hardly be deemed "qualified" on the basis of an application which is a copy of another applicant's work. Moreover, the

---

**17.** Even if idea and expression in this case were so bound together that plaintiff's antenna design were the only possible expression of the idea of transmission facilities at the site selected, the copyright laws would still protect plaintiff's compilation from copying by another who has not conducted an independent analysis. *Schroeder v. William Morrow & Co.*, 566 F.2d 3 (7th Cir.1977); *Orgel v. Clark Boardman Co.*, 301 F.2d 119, 120 (2d Cir.1962); *Central Tele-*

*phone Company of Virginia v. Johnson Publishing Co., supra.*

**18.** The FCC may, of course, hold the matter before it in abeyance pending the Court's decision following a trial if it wishes to do so. That, however, is a matter that is entirely up to the FCC.

**19.** See 47 C.F.R. § 73.3584.

public benefits they seek may not be obtained at the expense of the Copyright Act.

Since the plaintiff has met the standard for the grant of a preliminary injunction, the Court will issue an order for the impoundment of all of defendants' materials which infringe plaintiff's engineering report and antenna design.