**PARAMOUNT PICTURES CORP. et alia, Plaintiffs,**

v.

**[Jane DOE 1], Defendant.**

**TWENTIETH CENTURY FOX FILM CORP., et alia, Plaintiffs,**

v.

**[Jane DOE 2], Defendant.**

**Nos. CV–93–1372 (CPS), CV–93–1373 (CPS).**

United States District Court, E.D. New York.

April 27, 1993.

Sargoy Stein Rosen & Shapiro by Gary Kaplan, Jeffrey A. Rosen, New York City, for plaintiffs.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

In these two copyright infringement actions based on allegations of film piracy, the plaintiffs apply ex parte for an Order of Seizure directing the United States Marshal to accompany plaintiffs' experts to the business locations of each defendant and to seize and impound infringing videocassettes and the equipment used in manufacturing the allegedly infringing products. Plaintiffs also request that the court files in these cases be maintained under seal until the seizure order is granted and executed and that the affidavit of plaintiffs' investigator be maintained under seal pending further order of the Court. For the following reasons, the plaintiffs' ex parte application for an order of seizure in each case is denied. The applications to seal the court files (with the exception of this opinion) and the investigator's affidavit are granted subject to the conditions set forth below and the order of this or any reviewing court.

These cases involve allegations of "film piracy," i.e., the unlawful reproduction and sale or rental of videocassettes. Plaintiffs in both actions are corporations that produce and distribute motion pictures and are coordinating their efforts against film piracy.[1]

The defendant in the first action is a person identified by name in the sealed affidavits who allegedly owns and operates a retail video business located in Flushing, New York. The defendant in the second action is another person also identified in the sealed affidavits who allegedly owns and operates a retail video business located in Astoria, New York. Both sets of plaintiffs claim that defendants do not and did not at any relevant time have a license agreement with plaintiffs authorizing the duplication for sale or rental of any motion picture. Kaplan Aff. ¶ 6; Corrigan Aff. ¶ 9.

In the first action, the plaintiffs claim that they own the copyright to the following six motion pictures, among others: *Honey, I Blew Up the Baby, The Last of the Mohicans, A League of Their Own, Mo' Money, Sneakers,* and *South Central.* As part of their current applications, plaintiffs have submitted copies of the certificates of copyright registration for each of these motion pictures. Corrigan Aff. Ex. A.

In the second action, the plaintiffs claim that they own the copyright to the following six motion pictures, among others: *Diggstown, Housesitter, The Last of the Mohicans, A League of Their Own, Patriot Games,* and *Unlawful Entry.* As part of their current applications, plaintiffs have submitted copies of the certificates of copyright registration for each of these motion pictures. Corrigan Aff. Ex. A.

In both actions the plaintiffs claim that the respective defendants have infringed their copyrights by reproducing video copies of the respective six films and renting and/or selling these videos. The plaintiffs in each case provide an affidavit of an investigator who is employed by the Anti–Piracy Office of the Motion Picture Association of America, Inc. The investigator, who has been trained to distinguish between authorized and unauthorized videocassettes of the films produced and released by the plaintiffs, states that an unauthorized tape of motion pictures has one or more of the following characteristics: (1) the playing quality of an unauthorized tape may be inferior to authorized videocassettes in that when viewed the image, sound and color projections are "less clear" than the image, sound and color of an authorized tape; (2) an unauthorized tape may not bear a distinctive "heat stamp," which is a distinc-

---

1. Plaintiffs in the first action are Paramount Pictures Corporation, Universal City Studios, Inc., TriStar Pictures, Inc., Sony Pictures Entertainment Inc., Twentieth Century Fox Film Corporation, The Walt Disney Co., Metro–Goldwyn–Mayer Inc., Warner Bros., Best Film & Video Corp., Foxvideo Inc., Live Home Video/Live America Inc., Million Dollar Video Corp., Columbia/TriStar Home Video, and Republic Pictures Corp. Plaintiffs in the second action are Twentieth Century Fox Film Corporation, Universal City Stu-

dios, Inc., Columbia Pictures Indus., Inc., Metro–Goldwyn–Mayer, Inc., Paramount Pictures Corp., Warner Bros., The Walt Disney Co., TriStar Pictures Inc., Best Film & Video Corp., Foxvideo Inc., Hanna–Barbera Prods., Inc., Live Home Video/Live America Inc., Mex–American Home Video Corp., MexCinema Video Corp., Million Dollar Video Corp., Columbia/TriStar Home Video, Republic Pictures Corp., and South Gate Entertainment.

tive molding imprinted on the plastic cassettes by "some of the major film companies"; (3) the packaging of an unauthorized tape may not be "professional" and may not contain promotional labels, "distinctive" art work or trademarks of the respective film companies. Investigator Aff. ¶¶ 2, 3. As noted, plaintiffs offer the U.S. Marshal the assistance of their experts in identifying the infringing tapes to be seized.

In both cases, the investigator states that during a specified period of time he rented a total of six videocassettes from each defendant and that all six were unauthorized copies. The six films rented by the investigator in each case are the films for which the plaintiffs hold the copyright identified above in each case. The investigator determined that the films are unauthorized either because they were not professionally packaged or labeled, the promotional labels or trademarks did not appear on the packaging or labeling of the videocassettes which are present on authorized tapes, the cassettes lacked the heat stamps, or the quality of each cassette was inferior to authorized tapes. Investigator Aff. ¶ 6. The investigator also states that there are approximately 4,000 videocassettes in each of the defendants' stores and that of these 400 are unauthorized videocassettes of plaintiffs' films. He does not explain how he arrived at these conclusions. Investigator Aff. ¶ 8.

In the proposed order, the plaintiffs seek authorization to seize infringing videotapes and machines used to produce them located at the business premises of the defendants, as well as authorization to seize such materials at any location where defendants or their agents may be found within the Eastern District of New York. Plaintiffs have not provided a description of the defendants' places of business or a description of where the videocassettes are stored and likely to be found on the respective premises. To be clear, plaintiffs seek authorization to seize videocassettes which infringe the copyrights of the films identified above and also authorization to seize any videocassette which infringes any other copyright held by the plaintiffs. Plaintiffs do not explain how the seizure would be effected and, in particular, how

infringing tapes will be identified during the execution of the seizure order.

## DISCUSSION

### Impoundment

■ Under the copyright laws, a copyright owner may seek to impound infringing material. *See* 17 U.S.C. § 503(a). Moreover, the impoundment may in appropriate circumstances occur at the commencement of an action for copyright infringement. *See, e.g., Wallace Berrie & Co. v. Custom Styled Toys,* CV 82–1820, 1982 WL 1288 (E.D.N.Y. Aug. 16, 1982), *reprinted in* Copyright Law Reports, ¶ 25,492 (CCH 1981–83). Congress explicitly provided for the availability of impoundment in section 503(a) of the Copyright Act of 1976, which states:

> At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable, of all copies … claimed to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies … may be reproduced.

17 U.S.C. § 503(a). Section 503(a) provides for impoundment prior to a final determination that the defendant has infringed a plaintiff's copyright since the statute specifically states that copies that are "claimed to have been" illicitly produced or used are subject to impoundment. *See generally* Renard, Raoul Anthony, Comment, *PreTrial Remedies in Infringement Actions: The Copyright Holder's Impound of Flesh,* 17 Santa Clara L.Rev. 885, 892–95 (1977) (discussing change in provisions of Copyright Act of 1976 from the provisions of the Copyright Act of 1909).

■ However, when providing for this type of preliminary relief, Congress implicitly recognized that preliminary impoundment could infringe a defendant's rights under the United States Constitution and provided for safeguards by leaving the question of when impoundment is appropriate and the manner of the impounding to the discretion of the Court. *WPOW, Inc. v. MRLJ Enters.,* 584 F.Supp. 132, 134–35 (D.D.C.1984). Section

503(a) does not make impoundment a mandatory form of relief; the Court "may" impound the allegedly infringing materials. And any court-ordered impoundment must be effected on "terms [the Court] may deem reasonable."

In the current actions, the plaintiffs prove too little, while asking for too much.

1. *Due Process.* Because any impoundment necessarily entails a seizure of property and invasion of privacy interests not to speak of a confrontation between government in the agency of the United States Marshal and individuals, the invocation of this Court's discretionary powers under section 503(a) must involve appropriate safeguards for a defendant's constitutional rights. Plaintiffs contend that, because they have complied with the Rules of Practice adopted by the United States Supreme Court pursuant to the rulemaking power conferred upon the Court by section 25(e) of the Copyright Act of 1909 (the "Copyright Rules"), *see* 17 U.S.C. foll. § 501, their requested seizure order provides adequate safeguards for the defendants' rights.

The Copyright Rules,[2] adopted in 1909 and amended insignificantly in 1939 and again in 1966, provide for "summary seizure and impounding."[3] 3 *Nimmer on Copyright* § 14.-07, at 14–97 (1992); *see Duchess Music Corp. v. Stern,* 458 F.2d 1305, 1308 (9th Cir.), *cert. denied,* 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972). The rules set forth a procedure pursuant to which a plaintiff in a copyright infringement action can secure a writ of seizure from the clerk of court without judicial oversight or intervention, *see, e.g., Dealer Advertising Development, Inc. v. Barbara Allan Financial Advertising, Inc.,* 1977 WL 22753 (W.D.Mich.1977), simply by filing an affidavit describing the allegedly infringing materials and their location and posting a bond approved by the court:

Rule 3. Upon the institution of any action, suit or proceeding, or at any time thereafter, and before the entry of final judgment or decree therein, the plaintiff ... may file with the clerk of any court ... an affidavit stating upon the best of his knowledge, information and belief, the number and location, as near as may be, of the alleged infringing copies, records, plates, molds, matrices, etc., or other means for making the copies alleged to infringe the copyright, and the value of the same, and with such affidavit shall file with the clerk a bond executed by at least two sureties and approved by the court or a commissioner thereof.

Rule 4. Such bond shall bind the sureties in a specified sum, to be fixed by the court, but not less than twice the reasonable value of such infringing copies, plates, records, molds, matrices, or other means for making such infringing copies, and be conditioned for the prompt prosecution of the action, suit or proceeding; for the return of said articles to the defendant, if they or any of them are adjudged not to be infringements, or if the action abates, or is discontinued before they are returned to the defendant; and for the payment to the defendant of any damages which the court may award to him against the plaintiff.... Upon the filing of said affidavit and bond, and the approval of said bond, the clerk shall issue a writ directed to the marshal of the district where the said infringing copies ... etc. ... shall be stated in said affidavit to be located, and generally to any marshal of the United States, directing the said marshal to forthwith seize and hold the same subject to the order of the court issuing said writ, or of the court of the district in which the seizure shall be made.

Copyright Rules, 17 U.S.C. foll. § 501.

Rules 7 and 8 enable a defendant to object to the bond or sureties after the execution of

---

2. Since plaintiffs have applied to the Court, which has discretionary powers under the Copyright Act, rather than to the Clerk, there is some question as to the applicability of the Supreme Court rules to this application.

3. In 1939, the Court added Rule 1, which makes actions brought under the Copyright Act subject

to the Federal Rules of Civil Procedure, "in so far as they are not inconsistent with these rules." Copyright Rule 1, 17 U.S.C. foll. § 501. In 1966, the Court rescinded Rule 2, which had required that copies of the allegedly infringing products accompany the complaint. *See* Copyright Rule 2, 17 U.S.C. foll. § 501, (advisory notes).

the seizure. Rules 9 and 10 permit the defendant to apply to the Court for the return of the seized articles by filing an affidavit "tending to show that the articles seized are not infringing copies," and the court in its discretion may hold a hearing to determine whether the articles should be returned to the defendant.

■ Although the Court of Appeals for the Second Circuit has noted that the Copyright Rules have never been explicitly abrogated by either Congress or the Supreme Court, *see Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1124 (2d Cir.1989), their mandatory provisions are clearly inconsistent with the discretionary powers conferred on this Court by the Copyright Act of 1976.[4] Moreover, a literal reading of the rules would result in procedures of dubious constitutional validity in light of Supreme Court decisions handed down since the time of the rules' adoption. *See, e.g., WPOW, Inc. v. MRLJ Enters.*, 584 F.Supp. 132, 134–35 (D.D.C. 1984); *Bally Midway Mfg. Co. v. Mazzilli,*

CV 82–2490, CV 82–2700, (E.D.N.Y. April 6, 1983) (Nickerson, J.), *reprinted in* Gerber, David A., *Litigating the Copyright 'Gray Market' Case*, 217 PLI/Pat 269 (Jan. 1, 1986). Accordingly, compliance with the Supreme Court rules is not a sufficient basis on which to justify an ex parte impoundment under section 503(a).

In a series of cases decided in the early 1970's, the Supreme Court articulated the requirements of constitutional due process in the context of ex parte prejudgment seizure of a defendant's property. *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (sequestration); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (replevin); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (garnishment). In *Mitchell,* the Court, upholding a Louisiana sequestration statute that permits ex parte prejudgment seizure, outlined the minimum requirements of due process in such cases as follows: (1) the availability of ex parte prejudgment seizure must be limited to situa-

---

4. Thus, the Copyright Act of 1976, by altering the substantive rights of copyright holders to impoundment, arguably supersedes and renders null and void the Copyright Rules. Under the Copyright Rules, a litigant is entitled to a writ of seizure issued by the clerk if the requirements in the rules are met. *See* Copyright Rule 4, 17 U.S.C. foll. § 501 ("Upon the filing of said affidavit and bond, and the approval of said bond, the clerk shall issue a writ [of seizure]."). In contrast, under section 503(a) of the Copyright Act of 1976, the right to impoundment is left to the discretion of the court, both substantively and procedurally. 17 U.S.C. § 503(a) ("the court may order the impounding, on such terms as it deems reasonable"). Read together, the rules are inconsistent with the right to impoundment described in section 503: the rules describe preliminary impoundment as a mandatory right conditioned only on compliance with the rules, while section 503 clearly states that the right to impoundment is left to the sound discretion of the court. Since the right to impoundment is a substantive right and not simply a matter of procedure the standard set forth by statutory law governs. *See* 28 U.S.C. § 2072(b) (rules prescribed under the Rules Enabling Act "shall not abridge, enlarge or modify any substantive right").

Moreover, the legislative history of the Copyright Act of 1976 supports this view. Just prior to the enactment of the 1976 Act, the advisory committee observed that there are

serious doubts as to the desirability of retaining Copyright Rules 3–13 for they appear to be

out of keeping with the general attitude of the Federal Rules of Civil Procedure ... toward remedies anticipating decision on the merits, and objectionable for their failure to require notice or a showing of irreparable injury to the same extent as is customarily required for threshold injunctive relief.

Copyright Rule 3, Notes of Advisory Committee on Rules, 17 U.S.C. foll. § 501. However, the Committee refrained from any action because "Congress is considering proposals to revise the Copyright Act." *Id.* However, in the Copyright Act of 1976, Congress said nothing about the Copyright Rules.

In the legislative history of the 1976 Act, the House Report makes a brief comment on the Copyright Rules:

The same subsection [section 503(a)] empowers the court to order impounding "on such terms as it may deem reasonable." The present Supreme Court rules with respect to seizure and impounding were issued even though there is no specific provision authorizing them in the copyright statute, and there appears no need for including a special provision on ... the point in the bill.

H.R.Rep. No. 94–1476, 94th Cong., 2d Sess., *reprinted in* 1976 USCCAN 5659, 5776. Although this statement is ambiguous, it suggests that the Copyright Rules were not incorporated into the 1976 Act because the discretionary nature of the right to impoundment in section 503(a) renders the rules inapposite.

tions where plaintiff has established that the property to be seized is of a type that can be readily concealed, disposed of, or destroyed; (2) the plaintiff must allege specific facts based on actual knowledge supporting the underlying action and the right of plaintiff to seize the property; (3) the application for the order of seizure must be made to a judge rather than to a clerk; (4) the defendant has a right to a prompt, postseizure hearing to challenge the seizure; and (5) the defendant must be able to recover damages from the plaintiff if the taking was wrongful and to regain possession of the seized items by filing a bond. *Mitchell,* 416 U.S. at 616–18, 94 S.Ct. at 1904–05; *see also Connecticut v. Doehr,* — U.S. ——, —— – ——, 111 S.Ct. 2105, 2111–15, 115 L.Ed.2d 1 (1991); *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 606–07, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (holding that "notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner" in replevin actions); Owens, Paul S. *Impoundment Procedures Under the Copyright Act: The Constitutional Infirmities,* 14 Hofstra L.Rev. 211, 234–35 (1985).

The procedure for impoundment under the Copyright Rules, measured alongside the standard articulated in *Mitchell,* is constitutionally infirm in multiple respects. *See generally* Owens, *supra* at 236–39; 3 *Nimmer on Copyright* § 14.07, at 14–98 (1992) (noting that constitutionality of the Copyright Rules is subject to "serious question"). *But see Jondora Music Publishing Co. v. Melody Recordings, Inc.,* 362 F.Supp. 494, 499 (D.N.J.1973), *vacated on other grounds,* 506 F.2d 392 (3d Cir.1974), *cert. denied,* 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680 (1975); *Dealer Advertising Development, Inc. v. Barbara Allan Financial Advertising, Inc.,* 1977 WL 22753 (W.D.Mich.1977) (citing *Jondora* favorably). The applicability of the rules is not limited to situations where the

defendant likely could conceal or destroy the infringing materials. The rules do not require the plaintiff to demonstrate the merits of the underlying infringement claim and likewise do not even require that the application be made by one with personal knowledge of the pertinent facts. *See* Copyright Rule 3 (permitting application on "information and belief"). Under the rules, a clerk may issue the writ of seizure after the bond is approved by a court, Copyright Rule 4, and nowhere do the rules specify that a defendant has a right to a postseizure hearing to challenge the propriety of the seizure. *See* Copyright Rules 7–10 (leaving postseizure hearing to discretion of court). Furthermore, although the court does have a role in the impoundment procedure under the rules, that role is insignificant: the court's role can be characterized fairly only as ensuring formal compliance with the bond requirements since no showing of the merits of the underlying action is required. Owens, *supra* at 236.

Faced with the constitutionally deficient procedure established by the Copyright Rules, courts, exercising their discretion under section 503(a), have held copyright holders to the standards articulated in *Mitchell* and Rule 65 of the Federal Rules of Civil Procedure.[5] That is, in addition to requiring plaintiffs to post bond, courts require a showing of the merits of plaintiffs' underlying infringement action and the particular circumstances justifying proceeding ex parte; and they fashion orders of seizure which require the plaintiff and defendant to appear at a postseizure hearing, thus providing the defendant a prompt opportunity to challenge the propriety of the seizure. *E.g., Van Deurzen & Assoc. v. Sanders,* 1991 WL 183817 (D.Kan.1991); *WPOW Inc.,* 584 F.Supp. at 134–35; *Bally Midway Mfg. Co.* Recent decisions mark a trend of requiring a plaintiff applying for an ex parte order of impoundment to comply with the requirements of Rule 65 of the Federal Rules of Civil Procedure and the general principles

---

**5.** Rule 65, providing basically the same safeguards for a defendant's rights as those outlined in *Mitchell,* allows a temporary restraining order to issue without notice to a defendant only where the movant (1) has shown through specific facts that immediate and irreparable injury will result in the absence of the order and (2) justifies the claim that notice should not be required. Fed. R.Civ.P. 65(b). The rule also requires that, when a TRO has issued without notice, the motion for a preliminary injunction "shall be set down for hearing at the earliest possible time." *Id.*

governing preliminary injunctive relief. *See, e.g., Van Deurzen, supra; WPOW, Inc.,* 584 F.Supp. at 135 (citing cases); *see also Warner Bros.,* 877 F.2d at.1124 (observing that, absent the Copyright Rules, impoundment procedure would be governed by standards set forth in "general rules governing preliminary injunctive relief"); 3 *Nimmer on Copyright,* § 14.07, at 14–96 (1992) (noting that courts have imputed requirement of showing of likelihood of success into section 503(a)); Frackman, Russell J., *Litigating Copyright Cases,* 351 PLI/Pat 7 (Nov. 1992); Gerber, *supra,* 217 PLI/Pat 269; Owens, *supra* at 249–59.

■ Plaintiffs have implicitly acknowledged the constitutional infirmity of the impoundment procedure under the Copyright Rules by proposing an order which attempts in some respects to comply with the due process principles set forth in *Mitchell* and Rule 65. Plaintiffs have made a showing of a likelihood of prevailing on the merits, and the proposed order requires defendants and plaintiffs to appear at a postseizure hearing.[6] However, they have not gone far enough.

■ Although this Court can fashion a constitutionally · valid method of impoundment in appropriate cases, *see, e.g., WPOW, Inc.,* 584 F.Supp. at 134–35; *Bally Midway Mfg., supra,* the plaintiffs in these actions have not supported sufficiently their claim that the order of seizure is essential to the protection of their interests. To justify their application for an ex parte seizure order, the plaintiffs state only in conclusory fashion that a seizure order is essential to providing meaningful relief in any "film pirate" action. The plaintiffs explain that videocassettes are small, lightweight, and easily hidden or de-

stroyed, that those who deal in counterfeit videocassettes are aware of the illegal nature of their acts since warning labels describing criminal and civil liabilities for unauthorized copying appear on genuine cassettes, and that .film pirates conceal or destroy the offending videocassettes when they are apprised of a pending infringement action. Kaplan Aff. ¶ 7. This last conclusory assertion by plaintiffs' attorneys is not backed up by any specifics either about the defendants in these actions or others.

Nothing in plaintiffs' applications explains why a temporary restraining order would not suffice here. *See Van Deurzen, supra* (denying ex parte application for impoundment but inviting plaintiffs to file à motion for temporary restraining order); *WPOW, Inc.,* 584 F.Supp. at 135 n. 10 (noting that TRO may be more appropriate). Although in some circumstances notice of an infringement action prior to seizure effectively may deny a plaintiff relief, *see In re Vuitton Et Fils S.A.,* 606 F.2d 1, 5 (2d Cir.1979) (directing the district court to issue an ex parte temporary restraining order· in a trademark infringement case where notice repeatedly in the past had enabled the defendant to dispose of infringing materials and "serve[d] only to render fruitless further prosecution of the action"), the plaintiffs here have made no showing to support their conclusory allegations that the defendants here are savvy film pirates; nothing in the present applications suggests that defendants are engaged primarily in illegitimate and infringing activities and are thus likely to disregard an order from this Court preventing them from disposing of or destroying any videocassettes on their business premises. *See Owens, supra* at 253 (suggesting that impoundment may be

---

6. Plaintiffs have established the following two elements of a *prima facie* claim of copyright infringement: (1) that they own valid copyrights of the motion pictures at issue; and (2) that the defendants violated one of the exclusive rights vested in plaintiffs as copyright holder. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985). Plaintiffs have shown that they own valid copyrights of the products at issue in the two actions by submitting copies of the copyright certificates. 17 U.S.C. § 410(c) (certificate of registration constitutes prima facie evidence of the validity of the copyright). Moreover, they have provided affidavits stating that

defendants were not licensed to produce or distribute copies of the films for which plaintiffs hold the copyright. Both unauthorized production and unauthorized distribution of copies of copyrighted material constitute an infringement of the copyright. 17 U.S.C. § 106(1) and (3) (owner of copyright has exclusive right to reproduce the copyrighted work and to distribute copies of copyrighted work to the public). The Investigator's affidavit supports plaintiffs' position that defendants have distributed· unauthorized copies of plaintiffs' films and hence have violated plaintiffs' copyrights.

necessary where defendants primarily engage in infringing conduct). On the contrary, on the basis of plaintiffs' submissions, it appears that defendants are business people operating legitimate video rental and retail stores. Thus, plaintiffs have not shown satisfactorily that the present cases pose exigent circumstances such that postponing notice and a hearing until after the seizure is effected is appropriate. *See Doehr*, —— U.S. at ——, 111 S.Ct. at 2115.

Additionally, the plaintiffs have made no showing regarding the practices of the video rental trade, the operation of licensing agreements, and the process of obtaining authorized tapes. Thus, on the current record, there is no basis on which to appraise plaintiffs' claims that defendants are in fact producing unauthorized copies of tapes, as opposed to buying the tapes from another who holds himself out as a representative of plaintiffs or obtaining possession of the allegedly infringing tapes by some other means.

2. *Fourth Amendment.* Further, plaintiffs seek a sweeping order of seizure that is offensive to the Fourth Amendment of the United States Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. It is well settled that the Fourth Amendment prohibition against unreasonable intrusions protects commercial buildings as well as private homes and governs not only criminal investigations but also searches and seizures made pursuant to civil proceedings. *See Soldal v. Cook County, Ill.*, —— U.S. ——, ——, —— n. 10, 113 S.Ct. 538, 546, 546 n. 10, 121 L.Ed.2d 450 (1992); *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

■■■ In the civil context, the standards of reasonableness are less stringent than in the criminal context. *See United States v. Gordon*, 493 F.Supp. 808, 813 (N.D.N.Y.

1980), *aff'd,* 655 F.2d 478 (2d Cir.1981). Although the requirements of "probable cause and specificity do not apply strictly where an administrative or civil order of seizure is issued by a court," *id.*, in issuing civil seizure orders, courts are guided by the principles of probable cause and particularity that underlie the notion of reasonableness in the context of searches and seizures. *See Founding Church of Scientology of Washington, D.C. v. United States,* 409 F.2d 1146, 1150 (D.C.Cir.), *cert. denied,* 396 U.S. 963, 90 S.Ct. 434, 24 L.Ed.2d 427 (1969); *Laprease v. Raymours Furniture Co.,* 315 F.Supp. 716, 721–22 (N.D.N.Y.1970). Fourth Amendment principles guide a court in issuing a seizure order directing the United States Marshal to impound allegedly infringing articles under the Copyright Act. *See Warner Bros,* 677 F.Supp. 740, 765 (S.D.N.Y.1988); *Bally Midway Mfg., supra; Jondora Music Publishing Co. v. Melody Recordings, Inc.,* 362 F.Supp. 494, 499–500 (D.N.J.1973); *see also* 3 *Nimmer on Copyrights* § 14.07, at 14–100–01; Owens, *supra* at 239–43.

■■■ In the present case, plaintiffs' applications are deficient on Fourth Amendment grounds in at least one respect. The plaintiffs' proposed seizure order does not specify with particularity the premises to be searched or the articles to be seized. *See generally* 3 LaFave, Wayne R., *Search and Seizure: A Treatise on the Fourth Amendment* § 10.2(f), at 660–64 (2d ed.1987). The particularity requirement "ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987); *see also Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971); *United States v. Buck,* 813 F.2d 588, 590 (2d Cir.), *cert. denied,* 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987). Thus, the scope of a lawful search must be delineated by the object of the search and the places in which there has been a showing that the object is likely to be found. *See Garrison,* 480 U.S. at 84, 107 S.Ct. at 1016; *In re Impounded Case (Law Firm),* 840 F.2d 196, 200 (3d Cir.1988).

The requested order in the present cases is too broad in two respects. First, the requested order permits the plaintiffs not only to seize infringing videocassettes and the machines used to produce them at the defendants' places of business but also to seize such materials at any location where defendants or their agents may be found within the Eastern District of New York. Plaintiffs have provided no justification for this roving warrant. Second, plaintiffs request an order to seize any videocassette which infringes any copyright held by one of the plaintiffs, which would effectively avoid a restriction limiting plaintiffs' authorized seizure to infringing videocassettes of the six films in each case for which plaintiffs have provided copyright certificates. Such an order would abrogate the requirement that plaintiffs make a showing of the merits of their underlying claim of infringement and that the defendants possess infringing tapes of the films for which plaintiffs hold the copyright.

Finally, plaintiffs have not stated with sufficient particularity how infringing videocassettes will be distinguished from legitimate ones. Although plaintiffs describe in general how an unauthorized videocassette may be distinguished from an authorized one, they have not stated that all of the distinguishing markings of an authorized videocassette are present on the authorized videocassettes of films at issue here. Moreover, the criteria to be applied by the U.S. Marshal are in some cases extraordinarily subjective and, in effect, place the decision to seize or not in the hands of plaintiffs' expert rather than the U.S. Marshal. While plaintiffs state that "some of the distributing companies manufacture the cassette cartridge containing the tape" with a heat stamp, *see* Corrigan Aff. ¶ 5(B) (emphasis added); Investigator Aff. ¶ 3, plaintiffs nowhere claim that the heat stamp is present on all authorized videocassettes of the films at issue in these two actions.

### Order Sealing File

Plaintiffs' request to seal the court files in these two actions until defendants have notice of this action or any impoundment order is executed is hereby granted on condition that plaintiffs file within ten days of the date of this decision an additional set of papers redacting the names of the defendants, the names of their businesses and corresponding addresses, as well as the dates of the investigator's visits to the defendants' stores. This Memorandum and Order will not be sealed; however, the defendants' names will be omitted from the caption. Plaintiffs' request to seal the affidavits of the investigator in these cases is also granted pending further order of this or any reviewing court.

SO ORDERED.