**In the Matter of VUITTON ET FILS S.A.**

No. 915, Docket 79–3019.

United States Court of Appeals, Second Circuit.

Argued March 29, 1979.

Decided July 25, 1979.

J. Joseph Bainton, New York City, (Beckman Rich, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, of counsel), for petitioner.

Before MOORE, FRIENDLY and MESKILL, Circuit Judges.

PER CURIAM:

This is a petition by Vuitton et Fils S.A. ("Vuitton") for a writ of mandamus directed to the United States District Court for the Southern District of New York, Charles L. Brieant, Jr., Judge, instructing the court to issue *ex parte* a temporary restraining order in an action entitled *Vuitton et Fils S.A. v. Dame Belt & Bag Co., Inc., and Morty Edelstein,* 79 Civ. 0262. In our judgment, we are justified in asserting mandamus jurisdiction in this peculiar case, and we direct the district judge to issue an appropriate *ex parte* order under Fed.R. Civ.P. 65.

Vuitton is a French company, a *societé anonyme,* engaged in the sale and distribution of expensive leather goods, including a wide variety of luggage, handbags, wallets and jewelry cases, all under a trademark registered with the United States Patent Office in 1932. This trademark, a distinctive arrangement of initials and designs, has been extensively advertised over the years. Recently, Vuitton has had the misfortune of having to compete with New York area retailers who have been able to obtain counterfeit Vuitton merchandise from various sources and who sell that merchandise at prices considerably below those charged by Vuitton for the authentic items.

This, of course, has not pleased Vuitton and, in response, it has commenced 84 actions nationwide and 53 actions in this Circuit charging trademark infringement and unfair competition. 15 U.S.C. §§ 1114, 1121, 1125; New York General Business Law § 368–d. This present dispute originated in one of these actions. *See also Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126 (2d Cir. 1979).

On January 16, 1979, Vuitton filed a complaint in the district court seeking preliminary and permanent injunctions against the defendants, Dame Belt & Bag Co., Inc.[1] and an individual named Morty Edelstein,[2] and requesting damages. The gist of the complaint was that the defendants had infringed Vuitton's trademark and engaged in unfair competition by offering for sale luggage and handbags identical in appearance to those merchandised by Vuitton.[3] Accompanying the complaint was an affidavit by Vuitton's attorney explaining why service of process had not been effected and requesting that an *ex parte* temporary restraining order be issued against the defendants under Fed.R.Civ.P. 65(b). Vuitton explains its need for an *ex parte* order in the following terms:

> Vuitton's experience, based upon the 84 actions it has brought and the hundreds of other investigations it has made . . . has led to the conclusion that there exist various closely-knit distribution networks for counterfeit Vuitton products. In other words, there does not exist but one or two manufacturers of counterfeit merchandise, but rather many more, but a few of which have been identified to date.

> Vuitton's experience in several of the earliest filed cases also taught it that once one member of this community of counterfeiters learned that he had been identified by Vuitton and was about to be enjoined from continuing his illegal enterprise, he would immediately transfer his inventory to another counterfeit seller, whose identity would be unknown to Vuitton.

> . . . [I]n most Vuitton cases defendants maintain few, if any, records. The now too familiar refrain from a "caught counterfeiter" is "I bought only a few pieces from a man I never saw before and whom I have never seen again. All my business was in cash. I do not know how to locate the man from whom I bought and I cannot remember the identity of the persons to whom I sold."

> . . . If after Vuitton has identified a counterfeiter with an inventory of fake merchandise, that counterfeiter is permitted to dispose of that merchandise with relative impunity *after* he learns of the imminence of litigation but *before* he is enjoined from doing so, Vuitton's trademark enforcement program will be stymied and the community of counterfeiters will be permitted to continue to play its "shell game" at great expense and damage to Vuitton.

---

1. By notice dated January 30, 1979, the action against Dame Belt was dismissed.

2. By the time of oral argument on this petition, defendant Edelstein had made it clear to the clerk's office that he had no interest whatsoever in presenting his views on the matter, nor did he care what decision was eventually reached by the panel. This, of course, raises the question whether the petition by Vuitton is "moot," but it is our judgment that the question presented here is so obviously "capable of repetition, yet evading review" that we are not barred from reaching the merits of the petition. *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). *See Gannett Co. v. DePasquale*, —— U.S. ——, ——, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).

3. Vuitton's attorney presented samples of the allegedly counterfeit items to the panel at oral argument. As explained by Vuitton in its petition, "the [allegedly] counterfeit goods are attempts at exact copies of Vuitton merchandise, as opposed to merchandise whose similarity to genuine Vuitton merchandise is close enough as arguably to lead to confusion of origin and hence trademark infringement." Although Vuitton suggests that the competition's articles were "identical copies of genuine Vuitton merchandise," it is quick to point out that "[t]he counterfeits are identical to genuine Vuitton merchandise in surface appearance only. An expert can readily distinguish between the genuine and the counterfeits by reason of the uniformly inferior workmanship of the counterfeits."

■ A hearing on this application was held the next day, January 17, 1979, before Judge Brieant. Counsel for Vuitton explained: "All we seek this Court to do but for a few hours is to maintain the status quo, namely the defendants' inventory of counterfeit Vuitton merchandise." Vuitton also explained that, if notice of the pending litigation was required, "by the time this Court entered an order,[4] most if not all of the merchandise would have been removed from the premises." Because Vuitton was capable of giving the defendants in this action notice, however, a matter readily conceded by Vuitton, the district court declined to grant the request. That decision is, of course, not appealable, *Austin v. Altman*, 332 F.2d 273, 275 (2d Cir. 1964). The district court denied certification of the question presented by this case under 28 U.S.C. § 1292(b), and this petition followed. For the reasons that follow, we instruct the district court to grant an appropriate *ex parte* temporary restraining order pursuant to Fed.R.Civ.P. 65(b), narrow enough and of brief enough duration to protect the interests of the defendants, the precise terms of which shall be determined by the district court.[5]

Rule 65(b) provides in relevant part as follows:

A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required.

As explained by the Supreme Court in *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974), "[t]he stringent restrictions imposed . . . on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs

---

4. Vuitton claims that it has never lost an application for a preliminary injunction against the sale of counterfeit merchandise.

5. As is amply demonstrated by the persistent factual pattern in the Vuitton cases, this case is not only "extraordinary," it approaches the bizarre; we believe we are fully justified in assuming jurisdiction under 28 U.S.C. § 1651(a). In the absence of defendants who display either good faith or self-restraint, and in the absence of certification under 28 U.S.C. § 1292(b), these actions by Vuitton will rarely if ever proceed beyond the complaint stage. As a result, it is highly unlikely that this Court will have the opportunity to consider the merits of the issue raised by Vuitton's request for *ex parte* temporary restraining orders. *See IBM Corp. v. Edelstein*, 526 F.2d 37, 40 (2d Cir. 1975) ("appellate review will be defeated if the writ does not issue, for petitioner's claims are not of the kind that will be merged into any final judgment and thus capable of correction on appeal. This, too, is a proper ground for the issuance of a writ of mandamus"). We also note that different district judges in different districts of this circuit are reaching different results in these cases. Judge Eugene H. Nickerson of the Eastern District for example, has issued *ex parte* temporary restraining orders in three recent cases. *See, e. g., Vuitton et Fils S.A. v. Handbags & Accessories*, 78 C. 2144; *Vuitton et Fils S.A. v. Brill*, 78 C. 2150; *Vuitton et Fils S.A. v.*

*Uttal's Luggage*, 78 C. 2182. Vuitton informs us that other district judges have followed Judge Nickerson's path. Judge Brieant, on the other hand, who apparently presides over the bulk of the Vuitton litigation in the Southern District, has informed Vuitton that requests for such orders in cases like the one considered here would be considered by him to be "vexatious." By assuming jurisdiction in this case, then, we take advantage of an opportunity to bring about uniformity in the treatment of an issue that seems destined to arise again in the foreseeable future. This certainly is a result to be desired. *See La Buy v. Howes Leather Co.*, 352 U.S. 249, 259–60, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957) ("We believe the supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system."); *Will v. United States*, 389 U.S. 90, 107, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967) ("the writ serves a vital corrective and didactic function"). *See generally In re John S. Irving*, 600 F.2d 1027, 1033–1034 (2d Cir. 1979); *In re Attorney General of the United States*, 596 F.2d 58, 62–64 (2d Cir. 1979); *National Super Spuds, Inc. v. New York Mercantile Exchange*, 591 F.2d 174, 181 (2d Cir. 1979); Note, *Supervisory and Advisory Mandamus under the All Writs Act*, 86 Harv.L.Rev. 595 (1973).

counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. *Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, . . . but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *See also Carroll v. Princess Anne*, 393 U.S. 175, 180, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968) ("There is a place in our jurisprudence for *ex parte* issuance, without notice, of temporary restraining orders of short duration . . ."). *Cf. Fuentes v. Shevin*, 407 U.S. 67, 93, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) ("There may be cases in which a creditor could make a showing of immediate danger that a debtor will destroy or conceal disputed goods. But the statutes before us are not 'narrowly drawn to meet any such unusual condition.' "). *See generally* Developments in the Law—Injunctions, 78 Harv.L.Rev. 994, 1060 (1965) (footnote omitted):

> The ex parte temporary restraining order is indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief. Immediate action is vital when imminent destruction of the disputed property, its removal beyond the confines of the state, or its sale to an innocent third party is threatened. In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all.

Although this Court has on a number of occasions commented on the special nature of an *ex parte* order and has cautioned district courts to observe scrupulously the requirements of Rule 65(b), *see, e. g. Heyman v. Kline*, 456 F.2d 123, 127 n.2 (2d Cir.), *cert. denied*, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972); *Emery Air Freight Corp. v. Local 295*, 449 F.2d 586, 591 (2d Cir. 1971), *cert. denied*, 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972); *Biehunik v. Felicetta*, 441 F.2d 228, 229 n.2 (2d Cir.), *cert. denied*, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971); *Austin v. Altman, supra*, 332 F.2d at 275; *see also Arvida Corp. v. Sugarman*, 259 F.2d 428, 429 (2d Cir. 1958) (Lumbard, J., concurring), these comments by their very nature assume that such orders are warranted in certain circumstances. *See, e. g., Bethview Amusement Corp. v. Cahn*, 416 F.2d 410, 412 (2d Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970). In other words, although this Court has "frowned upon temporary restraining orders issued without even telephoned notice," *Emery Air Freight Corp. v. Local 295, supra*, 449 F.2d at 591, *see also* Advisory Committee's Note to Rule 65(b), 39 F.R.D. 122, 124–25, there are occasions when such orders are to be countenanced. In our judgment, this case is just such an occasion.

■ Assuming that all of the other requirements of Rule 65 are met, the rule by its very terms allows for the issuance of an *ex parte* temporary restraining order when (1) the failure to issue it would result in "immediate and irreparable injury, loss, or damage" and (2) the applicant sufficiently demonstrates the reason that notice "should not be required." In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1). *See P. Daussa Corp. v. Sutton Cosmetics (P.R.) Inc.*, 462 F.2d 134, 136 (2d Cir. 1972); *Robert Stigwood Group Ltd. v. Sperber*, 457 F.2d 50, 55 (2d Cir. 1972); *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971); *Miller Brewing Co. v. Carling O'Keefe Breweries*, 452 F.Supp. 429, 437–38 (W.D.N.Y. 1978). Here, we believe that such a likelihood of product confusion exists. The allegedly counterfeit Vuitton merchandise is virtually identical to the genuine items. Indeed, the very purpose of the individuals marketing the cheaper items is to confuse the buying public into believing it is buying the true article.

We also believe that Vuitton has demonstrated sufficiently why notice should not

be required in a case such as this one. If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action. This is precisely contrary to the normal and intended role of "notice," and it is surely not what the authors of the rule either anticipated or intended.

Accordingly, we hold that, when a proper showing is made, such as was made in this case, and when the rule is otherwise complied with, a plaintiff is entitled to have issued an *ex parte* temporary restraining order. Such an order should be narrow in scope and brief in its duration. The petition is granted.