ADOBE SYSTEMS, INC.; Lotus Development Corp.; Microsoft Corp.; Symantec Corp., Plaintiffs,

v.

SOUTH SUN PRODUCTS, INC., Defendant.

No. 99–CV–1407 TW JAH.

United States District Court, S.D. California.

July 20, 1999.

---

Eleanor M. Musick, Edward C. Schewe, Brown, Martin, Haller & McClain, San Diego, CA, for Plaintiffs Adobe Systems, et al.

## AMENDED ORDER DENYING PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER

WHELAN, District Judge.

### I. *Introduction*

Plaintiffs, makers of various popular computer software titles, commenced this action for copyright infringement under Section 106 of the Copyright Act of 1976, 17 U.S.C. §§ 106, 501(b). Plaintiffs accuse a local business, Defendant South Sun Products, Inc., of making and using unauthorized copies of Plaintiffs' software products, a practice commonly known as "software piracy."

Plaintiffs filed an emergency *ex parte* application for a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. To date, Defendant has not been served with a summons and complaint and has no notice of this action or the instant application.

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a). For the reasons expressed below, Plaintiffs' *ex parte* application for a temporary restraining order is **DENIED** in its entirety.

### II. *Background*

Plaintiffs Adobe Systems Inc. ("Adobe"), Lotus Development Corporation ("Lotus"), Microsoft Corporation ("Microsoft"), and Symantec Corporation ("Symantec") are companies engaged in the business of developing and marketing computer software. (*See* Compl. ¶¶ 10, 17, 24, 30). They hold registered copyrights over numerous popular computer software titles, including Adobe Premiere, Adobe PhotoShop, Lotus 1–2–3, Microsoft Windows, Microsoft Office, Symantec Norton Utilities, and Symantec PCAnywhere. (*See* Decl. of Robert M. Kruger ("Kruger Decl.") ¶ 6). Plaintiffs package and distribute these products with user manuals, end-user license agreements, and other documentation. (Compl. ¶¶ 12, 18, 25, 31).

Defendant South Sun Products, Inc. (hereinafter "South Sun" or "Defendant") distributes and wholesales jewelry. (*See* Decl. of David Haynes ("Haynes Decl.") ¶ 4). The company operates a 10–person showroom in New York City and is headquartered in San Diego, California. (*Id.*). At its two locations, South Sun collectively employs 40 persons and operates between 20 and 30 personal computers ("PCs"). (*Id.*; Compl. ¶ 38).

According to Plaintiffs, South Sun and its employees infringed Plaintiffs' copyrights by purchasing single copies of certain software packages and installing them on several, and in some cases all, of South Sun's PCs. (*See* Haynes Decl. ¶¶ 7, 8, 9; Compl. ¶¶ 38, 40). In addition, South Sun allegedly obtained "cracked" versions of Plaintiffs' software (versions that have been illegally modified to facilitate unauthorized use) and used them on two occasions to install software on a number of its PCs. (Haynes Decl. ¶¶ 11, 12). Plaintiffs obtained evidence of South Sun's alleged software piracy from Mr. David Haynes, a former employee who was terminated by South Sun in March 1999 due to personality conflicts with other company personnel. (*Id.* ¶ 5). During his employment with South Sun, Mr. Haynes worked as the company's computer network administrator. (*Id.*).

On July 8, 1999, Plaintiffs commenced this action, asserting that South Sun's activities constitute copyright infringement in violation of Section 106 of the Copyright Act of 1976. *See* 17 U.S.C. §§ 106, 501(b). The complaint asserts a single claim for copyright infringement and seeks injunctive relief, damages, attorney's fees, and costs. (Compl. ¶¶ 44–56). Plaintiffs have not served the Defendant.

With their complaint, Plaintiffs included an application for an emergency temporary restraining order. The application urges the

court to order South Sun's business premises searched for evidence of copyright infringement. Plaintiffs' reasons for seeking this relief without notice to the Defendant are as follows:

It is critical that this relief be granted without notice to the Defendant. Because the evidence of Defendant's infringements is located on its computers, Defendant can easily and quickly destroy the evidence with a few keystrokes or a few clicks of a mouse... Indeed, past experience shows that there is a substantial risk that, when notified in advance of proceedings to restrain infringement and seize unauthorized copies of computer software, a defendant will attempt to erase, destroy, remove, or hide infringing materials before they can be seized or impounded... If Defendant deletes or otherwise disposes of its illegal copies of Plaintiffs' software prior to seizure and impoundment, Plaintiffs' efforts to obtain redress will be severely if not totally frustrated.

(*See* Pls.' Mem. P. & A. Supp. T.R.O. at 3:6–14). In other words, if South Sun receives notice of this action, it could easily destroy evidence proving that it copied Plaintiffs' software, making it difficult for Plaintiffs to establish copyright infringement.

To prevent this anticipated destruction and concealment of evidence, Plaintiffs' application seeks extraordinary judicial relief. First, Plaintiffs seek an order directing the United States Marshal to enter Defendant's business premises to search for and to seize any infringing copies of Plaintiffs' software.[1] Second, Plaintiffs seek authorization to manually search the contents of Defendant's PCs and to conduct an "audit" of those PCs to detect unauthorized copies of Plaintiffs' products. The audit would scan the hard disk drives of South Sun's PCs and record the name, size, date, and time of every file, including files contained within compressed archives. (*See* Decl. of Herbert M. Gottlieb ("Gottlieb Decl.") ¶¶ 6–9). The audit program would then store this information onto a floppy disk. (*Id.* ¶ 8(i)). Third, Plaintiffs request expedited discovery and an order authorizing them to conduct depositions of South Sun's employees within two business days. Finally, Plaintiffs seek leave to file the complaint, the restraining order application, and all accompanying documents under seal.

### III. *Discussion*

Plaintiffs vigorously argue that they have established a likelihood of success on the merits of their copyright infringement claim and are entitled to a presumption of irreparable injury. *See Johnson Controls, Inc. v. Phoenix Control Systems, Inc.,* 886 F.2d 1173, 1174 (9th Cir.1989) (citing *Apple Computer, Inc. v. Formula Int'l Inc.,* 725 F.2d 521, 525 (9th Cir.1984)) (for purposes of temporary injunctive relief, irreparable injury is presumed when the plaintiff demonstrates likelihood of success on a claim for copyright infringement).

However, the court cannot reach this argument until it addresses the threshold question that arises anytime a party seeks a restraining order *ex parte:* have Plaintiffs presented an adequate justification for failing to give notice to the Defendant?

Rule 65(b) of the Federal Rules of Civil Procedure authorizes the court to issue a temporary restraining order without written or oral notice to the adverse party, but only if:

(1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed.R.Civ.P. 65(b).[2] As explained by the Supreme Court, the stringent requirements

---

1. To assist the United States Marshal, Plaintiffs seek appointment of special federal agents pursuant to 28 U.S.C. § 566. (*See* Pls.' Mem. P. & A. Supp. T.R.O. at 16:14–23).

2. Plaintiffs' *ex parte* temporary restraining order is properly sought under Federal Rule 65(b) rather than under Section 503(a) of the Copyright Act. *See Vector Research, Inc. v. Howard & Howard Attorneys P.C.,* 76 F.3d 692, 696 (6th Cir.

embodied in Rule 65(b) recognize that "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 438–39, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974); *United States v. Innamorati,* 996 F.2d 456, 487 (1st Cir.1993) ("[T]he *ex parte* submission of information from a party to the court and the court's ruling on that information without notice to or participation of the opposing party is fundamentally at odds with our traditions of jurisprudence … and can be justified only in the most extraordinary circumstances.") (internal citation omitted). In those rare instances where courts issue *ex parte* restraining orders, they limit them to preserving the status quo for so long as is necessary to hold a hearing—and no longer. *Granny Goose Foods, Inc.,* 415 U.S. at 439, 94 S.Ct. at 1124.

■ Restraining order applications sought *ex parte* require the court to serve as the absent party's advocate, triggering intense judicial scrutiny of a plaintiff's claims, the relief it seeks, and most importantly, its proffered justification for proceeding *ex parte.* "A temporary injunction can be an extremely powerful weapon, and when such an order is issued *ex parte,* the dangers of abuse are great." *American Can Co. v. Mansukhani,* 742 F.2d 314, 324 (7th Cir.1984) (internal quotations and citation omitted). Intense judicial scrutiny reduces the ability of litigants to use Rule 65(b) to ambush unprepared opponent. *Id.* at 324–25 ("[T]he procedural hurdles of Rule 65 are intended to force both the movant and the court to act with great care in seeking and issuing an *ex parte* restraining order."); *Matter of Sullivan Ford Sales,* 2 B.R. 350, 356–57 (Bankr.D.Me.1980) ("The extraordinary nature of *ex parte* relief requires exceptional scrutiny on the part of the court as the only real protection against loss or damage to the property interests of innocent parties."); *Austin v. Altman,* 332

F.2d 273, 275 (2d Cir.1964) ("This case presents a vivid example of the dangers and embarrassments of hasty action in hearing only one side when the other parties concerned could easily have been summoned for a preliminary hearing."); *Levine v. Comcoa Ltd.,* 70 F.3d 1191, 1194 (11th Cir.1995) (Hill, C.J., concurring) ("An *ex parte* temporary restraining order is an extreme remedy to be used only with the utmost caution."). This scrutiny is particularly warranted in cases such as this, where the Defendant is unaware that judicial proceedings have been commenced and the relief Plaintiffs request is so drastic that it presses uncomfortably against the constitutional boundaries imposed by the Fourth and Fifth Amendments.

■ Accordingly, *ex parte* injunctive relief under Rule 65(b) is generally confined to two situations. First, a plaintiff may obtain *ex parte* relief by showing that it is impossible to give notice to the adverse party because the plaintiff does not know the party's identity or location. *First Tech. Safety Sys., Inc. v. Depinet,* 11 F.3d 641, 650 (6th Cir.1993) (*"First Technology"*); *American Can Co.,* 742 F.2d at 322. Plaintiffs do not contend that it was impossible to serve South Sun, nor could they. Their application identifies South Sun's business address, includes an affidavit from a former employee, and describes its operations and personnel in detail. (*See* Haynes Decl. ¶¶ 4, 5, 11).

The second and remaining way a plaintiff may obtain an *ex parte* restraining order is by showing that proceeding *ex parte* is the "sole method of preserving a state of affairs in which the court can provide effective final relief." *Matter of Vuitton et Fils S.A.,* 606 F.2d 1, 4 (2d Cir.1979) (per curiam) (*"Vuitton"*) (quoting *Developments in the Law—Injunctions,* 78 Harv. L.Rev. 994, 1060 (1965)); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2951 at 256–57 (2d ed.1995) (same). For example, when a party threatens "imminent destruction of the disputed

1996) (citing *First Tech. Safety Sys. v. Depinet,* 11 F.3d 641, 652 (6th Cir.1993)) (holding that Rule 65(b) rather than Section 503(a) of the Copyright Act covers *ex parte* injunctive relief directed at protecting evidence of possible infringement);

*Religious Tech. Ctr. v. Netcom On–Line Comm. Servs., Inc.,* 923 F.Supp. 1231, 1261–62 (N.D.Cal. 1995) (evaluating *ex parte* copyright seizure order under Rule 65(b) rather than under Copyright Act).

property, its removal beyond the confines of the state, or its sale to an innocent third party," "giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all." *Vuitton,* 606 F.2d at 4.

The facts in *Vuitton* illustrate this concept. In that case, Vuitton, a famous manufacturer of expensive luggage, brought a trademark infringement action against several alleged counterfeiters. The complaint alleged that the defendants infringed Vuitton's trademarks by selling luggage identical in appearance to those merchandised by Vuitton. *Id.* at 2. Vuitton sought an *ex parte* restraining order on the ground that in over six dozen previous actions, its efforts to enforce its trademarks were foiled because the defendants, after receiving notice of the action, simply transferred their inventories to other members of a closely-knit group of counterfeiters. *Id.* at 2. The Second Circuit directed the district court to grant plaintiff's application for an *ex parte* restraining order because Vuitton had shown that the defendants would likely repeat this practice if they received notice of the action, which would "render fruitless further prosecution of the action." *Id.* at 5.

■ Unlike the defendants in *Vuitton* or the other cases cited by Plaintiffs, South Sun is not a sophisticated counterfeiter and does not run an elaborate software piracy ring. South Sun sells and wholesales jewelry, (Haynes Decl. ¶ 4), a line of business as far removed from the computer software industry as any this court can imagine. The Defendant is a mere end-user accused of installing, for internal use, single CPU versions of Plaintiffs' off-the-shelf software packages on several of its PCs. While these acts may constitute a breach of Plaintiffs' end-user license agreements and infringement of their federally registered copyrights, Plaintiffs can hardly argue that South Sun falls into the category of sophisticated counterfeiters for

which courts reserve the extraordinary remedy of *ex parte* injunctive relief.

Rather, Plaintiffs' sole justification for proceeding *ex parte* is their contention that if South Sun received notice of this action, it could easily remove evidence of copyright infringement by deleting Plaintiffs' software from its PCs. According to Plaintiffs, South Sun could "make the evidence of its illegal activities vanish in seconds simply by striking a few keys on a computer keyboard or with a few clicks of a mouse." (*See* Pls.' Mem. P. & A. Supp. T.R.O. at 11–12; *see also id.* at 3:6–9 (same)). The court finds this argument inadequate to justify *ex parte* injunctive relief.

In *First Technology, supra,* the Sixth Circuit held that where a party seeks an *ex parte* restraining order to protect and impound evidence in its opponent's possession, it must do more than simply state that its opponent *may* conceal or destroy evidence if it receives prior notice of the action. Specifically, the court stated:

> In order to justify proceeding ex parte [, Plaintiffs] must do more than assert that the adverse party would dispose of evidence if given notice... [P]laintiffs must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing.
>
> *The applicant must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history.*

*First Tech.,* 11 F.3d at 650–51 (emphasis supplied).[3] The court explicitly rejected an argument identical to one urged by Plaintiffs in this action-that an *ex parte* injunction is justified on the ground that evidence stored

---

**3.** The *First Technology* court also noted that a plaintiff cannot obtain an *ex parte* restraining order by merely pointing to the merits of its claims. 11 F.3d at 652 ("Plaintiff's assertion that defendants would conceal evidence if given notice because defendants allegedly ... infringed plaintiff's copyrights is insufficient to establish

that notice to the defendants would have rendered fruitless further prosecution of the action."). Indeed, such an argument would swallow Rule 65(b)(2)'s requirement that the court consider not only the "need for the restraining order," but also "the need for proceeding *ex parte.*" *American Can Co.,* 742 F.2d at 325.

electronically can be easily destroyed: [4]

> Showing that the adverse party would have the opportunity to conceal evidence is insufficient to justify proceeding ex parte. If it were, courts would be bombarded with such requests in every action filed. The applicant must show that the adverse party is likely to take the opportunity for such deceptive conduct.

*Id.* at 651.

The court agrees with and adopts the reasoning of *First Technology*. As that court recognized, in every civil action there is a possibility that a defendant will destroy or conceal evidence once it receives notice that an action has been commenced. Once notified, a defendant can erase its computer disks, burn, shred, or hide incriminating documents, and intimidate or coach potential witnesses. This opportunity presents itself to defendants in all civil cases, from high stakes technology disputes to routine personal injury and small claims actions. The extraordinary remedy of *ex parte* injunctive relief cannot be justified by merely pointing to the obvious opportunity every defendant possesses to engage in such unlawful deceptive conduct. Rather, a plaintiff must present specific facts showing that the defendant it seeks to enjoin will likely conceal, destroy, or alter evidence if it receives notice of the action. A plaintiff may satisfy this burden by identifying specific instances where the defendant has destroyed evidence or willfully violated court orders in the past. *First Tech.,* 11 F.3d at 651; *Vuitton v. White,* 945 F.2d 569, 575–76 (3d Cir.1991) (district court abused its discretion by failing to issue *ex parte* restraining order where plaintiff showed that trademark defendants failed to appear at earlier hearings and sold counterfeit goods in direct violation of previous court order); *see contra American Can Co.,* 742 F.2d at 322–23 (district court abused its discretion by issuing restraining order *ex parte* to preserve evidence of trade secret misappropriation where party seeking injunction failed to establish that its opponent was likely to disregard court orders and destroy evidence); *Religious Tech. Ctr. v. Netcom On–Line Comm. Servs., Inc.,* 923 F.Supp. 1231, 1262–63 (N.D.Cal.1995) (copyright defendant's statement during hostile exchange that "[n]o local government or court" had the power to prevent him from infringing plaintiff's copyrights did not show that defendant would likely violate a court order). Alternatively, a plaintiff may provide evidence connecting the defendant with other persons, engaged in similar unlawful activities, who have destroyed evidence or violated court orders in the past. *First Tech.,* 13 F.3d at 651; *Vuitton,* 606 F.2d at 4–5.

Plaintiffs have failed to carry their burden under either theory. First, they have not identified any instance where South Sun destroyed or concealed evidence or violated a court order. Their application identifies only one current South Sun employee who participated in or even knew about the alleged copyright infringement. (Haynes Decl. ¶¶ 10, 12, 13). Second, Plaintiffs have provided no evidence that suspected end-user copyright infringers such as South Sun routinely destroy or conceal evidence once notified that an action has been commenced. In fact, Plaintiffs have provided no evidence that end-user software copyright infringers are even aware of the illegal nature of their activities.

Plaintiffs' only evidence of South Sun's propensity to destroy or conceal evidence comes from the affidavit of Mr. Haynes, the former employee who reported South Sun's alleged copyright infringement.[5] (*See* Pls.' Mem. P. & A. Supp. T.R.O. at 12:7 (citing Haynes Decl. ¶ 5)). Specifically, Mr. Haynes declares that, in his opinion, "given advance notice of legal action pending against it, South Sun would make every effort to destroy the evidence of its wrongful acts, but would resort to the same conduct once the threat of being caught was over." (Haynes Decl. ¶ 15.) Although Mr. Haynes worked

---

**4.** The argument rejected by the *First Technology* court parallels the one urged by the Plaintiffs in this action: "[I]t is current business practice to store many business records electronically on computer tapes, floppy disks, and hard disks. Not only is information stored in this manner easier to use than printed materials, it also is easier to destroy." *First Tech.,* 11 F.3d at 651.

**5.** *See* Part II, *supra.*

for South Sun for approximately 18 months, (*id.* ¶ 5), he can identify only one incident supporting this assertion:

> [W]hen [a fellow South Sun employee] knew the fire marshal was going to inspect the premises, [she] instructed me to move some stacks of boxes out of a particular area. Immediately after the fire marshal left, she told me to put everything back to where it was before, once the risk of being caught was gone.

(*Id.* ¶ 15.) This isolated and trivial incident falls far short of the showing required under *First Technology.* Mr. Haynes' affidavit does not even specify when this alleged incident occurred or whether he was instructed to move these "stacks of boxes" from a knowingly unlawful location.

Even assuming he had provided such details, however, Mr. Haynes would have merely confirmed that one of South Sun's employees, like most persons, alters her behavior in the presence of government authority. For instance, restaurants meticulously clean their premises to prepare for an upcoming inspection by the local health department, even if the restaurant already conforms to the applicable standards. Travelers on our highways often slow their vehicles when they spot a law enforcement vehicle, even when they are not traveling at excessive speeds. This type of behavior provides no support for Plaintiffs' contention that South Sun would risk contempt or criminal penalties by violating court orders; by concealing, destroying, or altering evidence; or by engaging in similar unlawful deceptive conduct.

The court also rejects Plaintiffs' unsupported assertion that "[b]ecause the evidence of Defendant's infringements is located on its computers, Defendant can easily and quickly destroy the evidence with a few keystrokes

or a few clicks of a mouse." (*See* Pls.' Mem. P. & A. Supp. T.R.O. at 3:6–8 (citing Gottlieb Decl. ¶¶ 7, 8)).[6] The evidence allegedly encoded on Defendants' hard disks does *not* consist of single files, groups of files in isolated directories, or other items which could be removed "with a few keystrokes or a few clicks of a mouse." When a computer user installs one of Plaintiffs' applications, the installation program creates thousands upon thousands of files on the user's hard disk, collectively consuming countless megabytes. *See, e.g.,* Woody Leonhard, Lee Hudspeth, & T.J. Lee, *Office 97 Annoyances* (O'Reilly ed.1997) at ix (stating that complete installation of Microsoft Office 97 "occupies more than 200 megabytes of your hard disk"); *id.* at 15 (standard install of Office 97 occupies over 100 megabytes). The user is unaware of the number or identity of the files created by Plaintiffs' software and cannot determine precisely where they reside. Manual or automated deletion of that software may remove superficial indicia, such as its icons or presence in the user's application menu. However, telltale traces of a previous installation remain, such as abandoned subdirectories, libraries, information in system files, and registry keys. (*Cf.* Gottlieb Decl. ¶ 8(h) (acknowledging that piracy audit procedures can search system files that "can disclose a previous installation of a software program on the computer's local hard drive(s).")). Even if an infringer managed to delete every file associated with Plaintiffs' software, Plaintiffs could still recover many of those files since the operating system does not actually *erase* the files, but merely marks the space consumed by the files as free for use by other files. *See, e.g.,* Bruce Schneier, *Applied Cryptography* (2d ed.1996) at 228–29 ("When you delete a file on most computers, the file isn't really deleted... Many soft-

---

6. Plaintiffs repeat this factual assertion in various forms throughout their memorandum, citing Mr. Gottlieb's affidavit for support. (*See, e.g.,* Pl. Mem. P. & A. Supp. T.R.O. at 3:6–8 (citing Gottlieb Decl. ¶¶ 7, 8); *id.* at 11–12 (citing Gottlieb Decl. ¶ 5) ("Defendant has the ability to make the evidence of its illegal activities vanish in seconds by striking a few keys on a computer keyboard or with a few clicks of a mouse."); *id.* at 12:4–9 (citing Gottlieb Decl. ¶ 5) (asserting that "destruction or concealment of evidence is a substantial concern.")). These statements miscon-

strue Mr. Gottlieb's affidavit in two ways. First, nowhere in the affidavit does Mr. Gottlieb state that a manual or automated attempt to remove Plaintiffs' software destroys evidence that the software once resided on a hard disk. He merely states that such an attempt may make it difficult to determine *when* the software was previously installed. (*See* Gottlieb Decl. ¶ 5). Second, Mr. Gottlieb's affidavit expressly acknowledges that piracy "audit" procedures can detect previous installations of Plaintiffs' software. (*See id.* ¶ 8(h)).

ware vendors have made a fortune selling file-recovery software that recovers files after they have been deleted."); John Angermeyer et al., *MS–DOS Developer's Guide* (2d ed.1989) at 619 ("MS–DOS doesn't touch the information stored in the sectors or clusters occupied by a file"); Abraham Silberschatz et al., *Operating System Concepts* (Addison–Wesley ed.1991) at 371. Nothing short of a low-level erasure of the defendant's hard disks could ensure the complete removal of evidence proving Plaintiffs' software once resided on Defendant's PCs.[7] Plaintiffs' efforts to prove software piracy are aided by the fact that very few end-users are aware that superficially removing software from a PC leaves behind ample circumstantial evidence of copyright infringement. In sum, contrary to Plaintiffs' assertions it is *more* difficult to erase evidence of software piracy magnetically encoded on a computer hard disk than it is to physically destroy floppy disks, compact discs, invoices, and other tangible forms of evidence.

Finally, Plaintiffs' own complaint and restraining order application reveal ample alternative sources of proof. According to Plaintiffs, South Sun's employees conspicuously use Plaintiffs' software to operate the company's jewelry business. (*See* Haynes Decl. ¶¶ 7, 14; Compl. ¶¶ 37, 38; Pls.' Mem. P. & A. Supp. T.R.O. at 2). Plaintiffs may obtain evidence by taking the depositions of numerous South Sun employees and can, as in all software piracy cases, point to South Sun's inability to produce purchasing records justifying the number of copies of Plaintiffs' software that were put into use.

Accordingly, the court finds Plaintiffs' Rule 65(b) application deficient on its face because Plaintiffs have shown neither that proceeding

ex parte is the "sole method of preserving a state of affairs in which the court can provide effective final relief," *Vuitton,* 606 F.2d at 4, nor that giving notice to South Sun would "render fruitless further prosecution of the action." *First Tech.,* 11 F.3d at 650.

## IV.  Conclusion

For the foregoing reasons, the court **DENIES**, in its entirety, Plaintiffs' *ex parte* application for a temporary restraining order.[8] In light of this determination, the court also **DENIES** Plaintiffs' request to file its restraining order application and accompanying documents under seal.

If Plaintiffs wish to seek injunctive relief to prevent South Sun from infringing their copyrights, they may bring a fully noticed motion for preliminary injunction under Rule 65(a), filed and served in accordance with Civil Local Rule 7.1.

**IT IS SO ORDERED.**

---

7. Moreover, Plaintiffs are obviously aware that even if an alleged infringer performed a low-level erasure of his or her magnetic storage device in an attempt to conceal evidence of software piracy, Plaintiffs could still recover most (if not all) of the files previously stored once they gained physical possession of the device. *See* Bruce Schneier, *Applied Cryptography* (2d ed.1996), at 229. Nothing short of writing a random pattern over the disk's sectors or physically destroying the device could completely prevent Plaintiffs from recovering the deleted files which could prove copyright infringement. *Id.*

8. If Plaintiffs ultimately prevail against South Sun, the court in its discretion shall not award statutory costs or attorney's fees for expenses incurred in connection with the instant application. *See* 17 U.S.C. § 505 (authorizing discretionary award of costs and attorney's fees to prevailing parties); *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 557–58 (9th Cir.1996). The court finds that such an award would be unwarranted since Plaintiffs filed a facially deficient *ex parte* application and unjustifiably prosecuted it without notice to the Defendant.