COMCAST OF ILLINOIS X, LLC,
an Illinois Limited Liability
Company, Plaintiff,

v.

Bradley S. TILL, individually and d/b/a EZ Discount Stores, Inc., a dissolved Wisconsin corporation d/b/a EZ Discount Stores a/k/a ezdiscount-store.com a/k/a hot-gadgets.com, Defendants.

No. 03–C–1044.

United States District Court,
E.D. Wisconsin.

Nov. 17, 2003.

Maureen A. Beck, Jeffrey R. Platt, Coman & Anderson PC, Naperville, IL, Lee M. Seese, Cook & Franke, Milwaukee, WI, for Plaintiff.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff, Comcast of Illinois X, LLC, brings this action against defendant, Bradley S. Till, alleging violations of several federal statutes, including section 553 of the Cable Communications Policy Act. Plaintiff alleges that defendant distributes a variety of gadgets including devices that de-scramble or decode cable television services, and thereby enable parties to view programs without paying for them. Plaintiff has proceeded ex parte and now seeks a temporary restraining order ("TRO"), which, among other things, would authorize plaintiff's agents, with the assistance of

federal marshals, to enter defendant's home and seize his business records and any decoders on the premises. Plaintiff also seeks a preliminary injunction, expedited discovery, a freeze of defendant's assets, and an accounting of his income from the sale of the decoders.

## I. FACTS

Plaintiff operates cable television systems in Wisconsin and other states. To prevent unauthorized viewing of its program offerings, plaintiff encodes or scrambles them and provides each subscriber with a converter that descrambles the programs that the customer purchases.

In the spring of 2001, John Schramm, an investigator employed by plaintiff, discovered a website operated by defendant that offered for sale devices that decode cable television programs ("decoders"). Defendant, who operates a business out of his home in Brown Deer, Wisconsin, advertised that his company, Hot–Gadgets.com, was a leading supplier of "non-addressable" and "bulletproof" decoders. A non-addressable decoder is one that cannot be tracked by a cable company, and a bulletproof decoder is immune to electronic security countermeasures. The sale of such decoders is illegal if the seller intends that they be used to intercept cable television signals without authorization from the cable company. *See* 47 U.S.C. § 553(a). Besides decoders, defendant sells a variety of other products over his website, all of them apparently legal.

When he discovered defendant's website, Schramm, using an alias, ordered a decoder from defendant. Shortly thereafter, a package arrived C.O.D. at plaintiff's headquarters in Chicago. However, because Schramm's alias was unfamiliar to the receptionist, she declined to accept delivery.

Schramm subsequently inquired about his order, and defendant advised him that delivery had been refused. Schramm did not pursue the matter further at that time.

In June 2003, Schramm, again using an alias, ordered another decoder from defendant and enclosed payment in the form of a money order. Several days later, defendant endorsed the money order and sent Schramm the decoder. The decoder enabled Schramm to view all of plaintiff's scrambled premium and pay-per-view channels.

Approximately four months later, plaintiff commenced the present action.

## II. STANDARDS GOVERNING ISSUANCE OF EX PARTE TRO

Plaintiff seeks a TRO ex parte, arguing that it would suffer irreparable harm if defendant received notice of the suit before the requested relief was ordered. In the absence of specific statutory authorization, the only basis for providing ex parte injunctive relief is Fed.R.Civ.P. 65(b). *First Tech. Safety Sys., Inc. v. Depinet,* 11 F.3d 641, 649–50 (6th Cir.1993). Plaintiff initially argued that the relief sought was available under § 553(c)(1) of the Cable Communications Policy Act, and § 1203(b)(2) of the Digital Millennium Copyright Act. However, at the hearing on the TRO, plaintiff conceded that neither § 553(c)(1) or § 1203(b)(2) authorized all of the relief it requested and stated that it relied primarily on Rule 65(b).

Rule 65(b) authorizes a court to issue a TRO ex parte only if it clearly appears that the plaintiff will suffer irreparable injury before the adverse party can be heard.[1] This stringent restriction on the availability of ex parte TROs "re-

---

1. Rule 65(b) also requires the applicant's attorney to certify in writing the reasons that notice should not be required.

flect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted to both sides of a dispute." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 423, 438–39, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). It also underscores that the purpose of a TRO is to preserve the status quo and prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Id.* at 439, 94 S.Ct. 1113.

▮ A court may order a seizure ex parte only if providing notice to the defendant "would render fruitless the further prosecution of the action." *Am. Can Co. v. Mansukhani,* 742 F.2d 314, 322 (7th Cir. 1984); *see also Depinet,* 11 F.3d at 650; *In re Vuitton et Fils S.A.,* 606 F.2d 1, 5 (2d Cir.1979). The plaintiff must demonstrate that the order is necessary to preserve evidence and, even then, the order must be of very limited scope and brief duration. *Am. Can Co.,* 742 F.2d at 323. The plaintiff must also show that less intrusive means of protecting its interests such as an ex parte order enjoining the destruction or transfer of evidence are unavailable. *Id.* In other words, the plaintiff must show that the defendant is likely to disobey a court order to preserve evidence until a full hearing can be held. *Id.* at 323–24. In the present case, plaintiff argues that if it notified defendant of the suit before executing a seizure, defendant would likely secrete or destroy his business records, transfer any decoders that he possesses to others and hide his illicit profits. Plaintiff states that this would make it more difficult to prove the full extent of the relief to which it is entitled.

### III. DISCUSSION

Plaintiff requests orders: (1) restraining defendant from advertising and selling decoders; (2) further restraining him from secreting or destroying evidence such as business records and from transferring to others any decoders that he possesses; (3) freezing his assets; (4) authorizing plaintiff, with the assistance of federal marshals, to enter defendant's home, by force if necessary, and seize the business records and decoders found there; (5) requiring defendant to immediately disclose any other location where business records and decoders may be found; and (6) granting expedited discovery. As explained below, I conclude that only orders restraining defendant from destroying evidence or disposing of or transferring assets and allowing expedited discovery are warranted.

▮ First, I conclude that plaintiff has not presented sufficient evidence that it will suffer irreparable harm if defendant is not immediately restrained from advertising and selling decoders on his website. Plaintiff discovered defendant's activities over two and a half years ago but did not investigate the matter at that time. More recently, even after confirming that defendant was likely engaging in illegal activity, plaintiff waited almost four months to commence an action. Thus, plaintiff's assertion that it will suffer irreparable harm if I do not shut down defendant's business prior to a contested hearing, which can be held in a few days, is unconvincing. Additionally, plaintiff has not shown why it is necessary to shut down defendant's business without giving him notice of plaintiff's suit and an opportunity to be heard. Nothing that defendant might do between now and the hearing date could prevent me from ordering him not to sell decoders. *See Am. Can Co.,* 742 F.2d at 322–23. Moreover, defendant will be ordered not to destroy evidence and to retain records of any sales of decoders made between the date of this order and the date of the hearing.

▮ Second, plaintiff has not demonstrated that it is necessary to issue an ex

parte order authorizing plaintiff's agents to enter defendant's home and seize his records and property. As previously noted, I may grant such an order only upon a showing that the failure to do so would render fruitless the further prosecution of this action. To satisfy this requirement, plaintiff must show either that the defendant has a history of violating court orders or destroying evidence or that persons similar to him have such a history. *Depinet*, 11 F.3d at 651.

Plaintiff presents no evidence that defendant has violated court orders or destroyed evidence, but does show that other sellers of decoders have done so. Reported cases also describe such conduct. *See Century ML–Cable Corp. v. Carrillo*, 43 F.Supp.2d 176, 181 (D.P.R.1998) (indicating that defendant destroyed computers and sales records in violation of TRO); *MediaOne of Del., Inc. v. E & A Beepers*, 43 F.Supp.2d 1348, 1352 (S.D.Fla.1998) (stating that defendants withdrew $130,000 from accounts after learning of asset freeze); *Intermedia Partners S.E. v. QB Distrib., L.L.C.*, 999 F.Supp. 1274, 1283 (D.Minn.1998) (finding that defendant manufacturer and distributor of decoders had history of destroying records of sales and customers); *Time Warner Cable of N.Y. City v. U.S. Cable T.V., Inc.*, 920 F.Supp. 321, 324–31 (E.D.N.Y.1996) (documenting defendants' violation of court order and attempt to transfer business to another seller).

However, plaintiff acknowledges that the defendant in the present case is different from the other sellers of decoders that it has pursued in that he uses his real name and address in conducting business. His website is registered in his real name,

and he ships products from his real address. Thus, it is clear that defendant is doing business openly and not attempting to avoid detection. Defendant also appears to differ from other sellers of decoders in that he sells numerous other apparently legal products and operates his business out of his home. These facts suggest that defendant may believe that his conduct is lawful and also that he may be less likely than many other defendants to disobey a court order.

Further, even if plaintiff had established that defendant was likely to violate a court order by destroying evidence, plaintiff has not shown that such conduct would render fruitless further prosecution of this action. Plaintiff possesses evidence that defendant advertised and sold decoders. This evidence would likely be sufficient to establish liability. Plaintiff argues that if defendant destroyed his records, plaintiff could not establish all of defendant's illegal sales and thus the full amount of damages available to it. However, even if plaintiff can prove only one unlawful sale, defendant could be liable for damages of up to $60,000. *See* §§ 553(c)(3)(A)(ii) and 553(c)(3)(B) (providing that an aggrieved party can recover statutory damages up to $10,000 for violations of § 553(a) and that the award may be increased by the court up to $50,000 if the violation was willful and committed for purposes of commercial advantage or private financial gain). Thus, plaintiff has not shown that in the absence of a seizure, further prosecution of this action will be fruitless.

■ Further, an ex parte seizure order is too drastic a remedy to employ simply to enable a party to recover evidence that will make it easier to prove damages.[2] Ex

---

2. Plaintiff also argues that it would suffer irreparable harm if it could not examine defendant's records to determine which of plaintiff's current customers purchased decoders from defendant. However, for two rea-

sons, I decline to order a seizure ex parte on this basis. First, as indicated, plaintiff has not sufficiently established that defendant is likely to violate a court order by destroying

parte orders should be avoided if at all possible. *See Am. Can Co.*, 742 F.2d at 324 (noting that "[a] temporary injunction can be an extremely powerful weapon, and when such an order is issued ex parte, the dangers of abuse are great"). And a seizure order is a particularly drastic form of ex parte relief because it implicates rights protected by the Fourth Amendment.[3] *See Adobe Sys., Inc. v. S. Sun Prods., Inc.*, 187 F.R.D. 636, 639 (S.D.Cal.1999). Seizure is an even more drastic form of relief in the present case because it would involve entry into a home. "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (internal quotation marks and citation omitted); *see also Time Warner Entm't Co. v. Does Nos. 1–2*, 876 F.Supp. 407, 413 n. 7 (E.D.N.Y.1994); *Paramount Pictures Corp. v. Doe*, 821 F.Supp. 82, 91 (E.D.N.Y.1993). In the present case, there is insufficient basis for authorizing plaintiff's agents to enter defendant's home, by force if necessary, and seize virtually any property they deem relevant.[4]

Moreover, the requested seizure implicates the Fifth Amendment as well as the Fourth. In order to ensure that the seizure is effective, plaintiff asks that defendant be compelled to disclose to it the location of any records pertaining to the sale of decoders and the location of any unsold decoders.[5] Because the statutes pursuant to which this suit was filed also contain criminal penalties, *see, e.g.*, 47 U.S.C. § 553(b), defendant would be entitled to invoke his Fifth Amendment privilege against self-incrimination and refuse to provide the information that the proposed order, on pain of contempt, purports to require. As at least one court has recognized, such an order is inconsistent with an individual's constitutional right to refuse to produce self-incriminating information. *See Suppressed v. Suppressed*, 109 F.Supp.2d 902, 905 (N.D.Ill.2000). When confronted with a court order compelling the disclosure of information, an ordinary citizen may not understand that he or she may remain silent. *See id.* (noting that, despite advice to the contrary, ordinary citizen may not understand that he may refuse to disclose information despite court order compelling him to do so).

■■■ Thus, weighing the due process concerns underlying the long-standing judicial reluctance to issue ex parte orders, as well as the Fourth and Fifth Amendment implications of the order requested, against the relatively slight risk that defendant will violate the court's order and the relatively small amount of harm that plaintiff would suffer in the event of a violation, I decline to grant a seizure order ex parte. However, because plaintiff has shown that some sellers of decoders have destroyed evidence and secreted assets, I will order defendant to preserve all of his business records relating to the sale of

evidence. Second, plaintiff has cited no authority and developed no argument that a seizure may be ordered ex parte at the behest of a private party to assist such party in discovering evidence enabling it to bring legal claims against third parties.

3. The Fourth Amendment's protection against unreasonable searches and seizures "fully applies in the civil context." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 66–67 & n. 11, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992).

4. Plaintiff's proposed order states that the marshals shall assist plaintiff in seizing any of defendant's property plaintiff "reasonably believes" is relevant to its case. (Prop. Order at 5.)

5. Plaintiff's counsel advises that sellers of decoders often store them in rented storage units.

decoders as well as any decoders that he presently possesses. Because defendant's assets may have resulted from the profits of unlawful sales, I will further restrain him from disposing of or otherwise secreting any of his assets pending a hearing on plaintiff's request for relief.[6] If defendant ignores these restraints and/or destroys evidence or secretes assets, he will be subject to criminal contempt proceedings and possible imprisonment. I will also grant plaintiff's request for expedited discovery. I conclude that a TRO containing the foregoing provisions but not authorizing a seizure strikes the proper balance between protecting plaintiff's right to prosecute this lawsuit and the constitutional rights implicated by the requested relief.

### ORDER

For the stated reasons,

**IT IS ORDERED** that plaintiff's ex parte motion for temporary relief is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the defendant, defendant's agents, employees, and any business entities and/or persons controlled by defendant are hereby:

1. Enjoined and restrained from the transfer or movement of cable television decoding devices and related equipment, with such equipment including but not limited to cable television decoders, converters (if modified so as to be capable of decoding scrambled cable transmissions, or if connected to other decoding equipment described herein), de-

scramblers, descrambling cubes or "programmers," converter-decoder combination units, integrated circuits, quick boards, smart boards, test kits, chips, E proms and circuit boards (hereinafter "Decoding Devices"). Defendant will be permitted to continue selling Decoding Devices in the ordinary course of his business pending a hearing on plaintiff's motion for a preliminary injunction; however, plaintiff is restrained from selling all or substantially all of his inventory of Decoding Devices to other individuals or entities in an effort to conceal such Devices, and defendant is ordered to retain any records pertaining to any sale of Decoding Devices he may make between the date of this order and the hearing on the preliminary injunction;

2. Restrained and enjoined from destroying, altering, removing or secreting any of the defendant's books and records, including but not limited to invoices, purchase orders, receipts, banking records, safe deposit box records, investment records, insurance policies, shipping labels, or tax returns, including all records stored on computer discs or tapes or within computer terminals, hard drives, servers or otherwise, which contain any information whatsoever concerning the business or finances of the defendant or otherwise reflect transactions of any kind involving Decoding Devices;

3. Restrained from transferring, removing, encumbering or permitting the withdrawal of any assets or property, in-

---

**6.** A district court is not authorized to freeze a defendant's assets solely to preserve a party's right to recover damages. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999). However, a court may order an asset freeze to preserve a party's right to equitable relief. *See Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290, 61 S.Ct. 229, 85 L.Ed. 189 (1940); *CSC Hold-* *ings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir.2002); *U.S. ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 496–97 (4th Cir. 1999). In the present case, plaintiff requests equitable relief in the form of an accounting and constructive trust. Moreover, my purpose in freezing defendant's assets is not to preserve defendant's right to recover damages; rather, it is to preserve possible evidence of the profits from unlawful sales.

cluding the contents of any safe deposit boxes, presently or formerly belonging to the defendant, jointly or severally, whether real or personal, tangible or intangible, including but not limited to cash, bank accounts of any kind, stock and bond accounts, and title to defendant's property.

IT IS FURTHER ORDERED that plaintiff is granted expedited discovery from defendant, any of defendant's accountants and other agents or persons acting on defendant's behalf, and any electronic mail or Internet service providers regarding defendant's decoder sales business, and the location, nature and amount of defendant's assets, including discovery of business records, banking records and invoices, including all records stored on computer terminals, servers, hard drives, disks or tape or otherwise, regarding the purchase, sale, modification, storage and distribution of and payment for cable television Decoding Devices and related equipment by or from defendant or any of defendants' agents, employees, servants, successors, assigns or any person and/or entity acting directly or indirectly on defendant's behalf. This expedited discovery shall include depositions, interrogatories, requests for admissions, production of documents, and service of subpoenas pursuant to Fed.R.Civ.P. 30, 33, 34, 36 and 45.

IT IS FURTHER ORDERED that, pursuant to Fed.R.Civ.P. 65, the plaintiff shall file a bond with the Clerk of Court in the amount of $2,000 should it be determined that the plaintiff is not entitled to the relief set forth in this order.

IT IS FURTHER ORDERED that the temporary restraining order as described herein shall enter, once signed and the bond requirement is in place, by its terms expire after such time of entry not to exceed ten (10) days, unless for good cause shown it is extended. Plaintiff shall satisfy the bond requirement herein by filing with the Clerk a Notice of Filing and a copy of bond issued that shall also be served upon defendant at the time the provisions of this order are carried out. Upon receipt of the original bond issued, plaintiff shall file same with the Clerk.

IT IS FURTHER ORDERED that defendant appear at a telephonic status conference held by Magistrate Judge Patricia J. Gorence on November 25, 2003, at 10:00 a.m. The court will initiate the call. Defendant is ordered to contact Deputy Clerk Christine Stanton at (414) 297–1835 by 12:00 noon on November 24, 2003 and provide the court with a telephone number at which he can be reached.

FINALLY, IT IS ORDERED that the file in this case shall remain sealed except for this decision and order until the defendant is served with a copy of this decision and order, at which time this case will no longer be sealed.